Robert C. THEAMA, Patricia L. Theama, Tracy Theama by her Guardian ad Litem, Robert H. Bichler, and Terry Theama by his Guardian ad Litem, Robert H. Bichler, Plaintiffs-Appellants-Petitioners,

v.

CITY OF KENOSHA, a municipal corporation, and Employers Mutual Liability Insurance Company of Wisconsin, a domestic insurance corporation, Defendants-Respondents.

Supreme Court

*No. 81–2451. Argued November 1, 1983.—Decided March 8, 1984.*

(Also reported in 344 N.W.2d 513.)

For the plaintiffs-appellants-petitioners there was a brief in court of appeals by *Robert H. Bichler, Emily S. Mueller* and *Thompson & Coates, Ltd.,* Racine, and oral argument by *Mr. Bichler.*

For the defendants-respondents there was a brief in court of appeals by *David W. Paulson* and *Heft, Dye, Heft & Paulson,* Racine, and oral argument by *C. James Heft.*

LOUIS J. CECI, J.   This is a review of an order of the court of appeals, dated December 7, 1982, summarily affirming a summary judgment of the Kenosha county circuit court, Michael S. Fisher, circuit judge, that dismissed the minor children's claims for the loss of society and companionship arising from injuries sustained by their father.  We hold that a minor child may recover for the loss of a parent's society and companionship caused by negligent injury to the parent.  Accordingly, we reverse the order of the court of appeals and remand the cause to the circuit court.

The complaint alleges that on June 27, 1978, at approximately 2:30 a.m., Robert C. Theama was driving his motorcycle on Kennedy Drive in the city of Kenosha. The complaint also states that as a result of insufficient lighting, Theama was unable to see a deep hole in the roadway's surface.  His motorcycle struck the hole, causing Theama to lose control of the cycle and to be thrown from it.  As a result of this accident, Theama suffered severe injuries to the head and internal organs, which resulted in permanent damage to the brain and impairment of visual, perceptual, motor and speech functions, as well as other physical and emotional effects.

In the first claim of plaintiffs' complaint, Robert Theama seeks damages for his own injuries, as well as

for past and future pain and suffering, loss of earnings, impairment of earning capacity, expenses for past and future care and for past and future medical expenses. His wife, Patricia L. Theama, asks for damages for the loss of the support, society, companionship, and consortium of her husband due to his injuries, in the second claim. The third and fourth claims concern those of the minor children, Tracy and Terry Theama, for the loss of the care, society, companionship, protection, training, and guidance of their father because of his extensive injuries.

The defendants, the city of Kenosha and Employers Mutual Liability Insurance Company of Wisconsin, moved the trial court for summary judgment of the third and fourth claims of the minor children, stating the plaintiffs' complaint failed to set forth a cause of action for which relief may be granted. The trial judge granted the defendants' motion to dismiss the claims, relying on *Cogger v. Trudell*, 35 Wis. 2d 350, 151 N.W.2d 146 (1967). The trial court reasoned that because a minor child has no independent cause of action under the wrongful death statute for the death of a parent when the other parent survives, the court could not justify an independent common law action for loss of society and companionship when both the children's father and mother were still living, in spite of the permanency of the father's injuries.[1]

The plaintiffs petitioned for bypass of the court of appeals, and this court denied the petition for bypass. The court of appeals then certified the appeal to this court, which was also denied. On remand following the refusal of certification, the court of appeals summarily affirmed the order of the trial court.

---

[1] The court may impose a lien of fifty percent on the total amount recovered for the minor children's benefit. Section 895.04 (2), Stats.; *Cogger v. Trudell*, 35 Wis. 2d at 356–57.

The issue we must decide is whether or not a minor child may maintain a cause of action against a tortfeasor for loss of society and companionship of the parent.

The plaintiffs argue that even though the courts of this state have not explicitly recognized the child's right to recover for the loss of society and companionship of the injured parent, such a cause of action is implied by the logic found in *Shockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (1975). The *Shockley* decision recognized the parents' right to recover for loss of aid, comfort, society, and companionship of a child during minority when the loss is occasioned by another's negligence.

We note that no such cause of action existed at common law. Therefore, this is a question of first impression for this court. However, we address this issue with determination and commitment, for, as we noted in *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 551, 150 N.W.2d 137 (1967), "The genius of the common law is its ability to adapt itself to the changing needs of society." We believe that the resolution of this issue is yet another step along the evolution of how the courts of this state view the changing nature of the family unit. A brief review of the development of actions within the family is relevant to our discussion.

Historically, under the doctrine of *paterfamilias*, all rights concerning the recovery for injuries to family members were vested in the father. Similar to the master-servant relationship, the father possessed an ownership interest in the services of the other family members, namely, the wife and children. Thus, he could recover the pecuniary value of these services, in addition to incidental expenses, such as medical costs, when deprived of them through a defendant's intentional or negligent conduct. Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tor-*

*tious Injury to the Parent,* 56 B.U.L. Rev. 722, 726 (1976).

Gradually, the father's loss of his wife's or child's love, care, and companionship was recognized as being recoverable. *Selleck v. The City of Janesville,* 104 Wis. 570, 80 N.W. 944 (1899). Although the father's possessory interest in his wife's and children's services had originally served as the groundwork for these claims, the sentimental aspects of the losses became the focus of these actions. As the writer of one law review note points out,

"The action became one for loss of 'consortium,' of which services constituted merely one element. Under modern practice, husbands and fathers have obtained substantial recovery for loss of consortium even when the wife or child had been rendering no services." 56 B.U.L. Rev. at 724 (footnotes omitted).

Prior to 1950, the wife did not have an action at common law for loss of her husband's consortium resulting from the negligent acts of another. This was based upon the archaic common law doctrine that upon marriage, the woman assumed the status of a chattel and was legally nonexistent. *See, Moran v. Quality Aluminum Casting Co.,* 34 Wis. 2d at 546. However, in 1950, the court of appeals for the District of Columbia held that a wife could in fact recover for loss of consortium resulting from a negligent injury to her husband, in the decision of *Hitaffer v. Argonne Co.,* 183 F.2d 811 (D.C. Cir. 1950).

This court refused to follow the *Hitaffer* court's lead in *Nickel v. Hardware Mut. Casualty Co.,* 269 Wis. 647, 70 N.W.2d 205 (1955), holding that a married woman did not possess such a right of action at common law and that such a right had not been conferred by statute. However, in the *Moran* decision, this court acknowledged that changing social conditions mandated the recognition of such a claim.

"Both logic and the interest of justice require that, if a husband is to be accorded the right to recover for loss of consortium of the wife injured through the negligent act of another, a wife also should be accorded the same right where she sustains a loss of consortium of the husband. The genius of the common law is its ability to adapt itself to the changing needs of society. Because the bases on which the old common-law rule which denied to the wife the right of recovery for loss of her husband's consortium rest on historical concepts which long ago disappeared, we deem the rule of *Nickel v. Hardware Mut. Casualty Co.* [which denied such recovery] should be overruled. . . ." *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d at 551–52.

Most recently, in *Shockley v. Prier*, this court concluded that parents should be allowed to recover for the loss of aid, comfort, society, and companionship of a child during minority when such loss is occasioned by the negligence of a third party. *Shockley v. Prier*, 66 Wis. 2d at 401. The *Shockley* decision focused upon the changes in the family relationship which had occurred since 1925, when this court had found that parents could recover the following damages for injuries to a child:

" 'But when a minor child is injured by the negligence of another . . . the parent can recover (1) for loss of the minor's earning capacity during minority and (2) for reasonable medical and nursing expenses during minority.' " *Id.* at 397, citing *Callies v. Reliance Laundry Co.*, 188 Wis. 376, 380, 206 N.W. 198 (1925).

This court determined that the parent-child relationship should no longer be viewed as analogous to that between a master and servant and stated the following:

"Society and companionship between parents and their children are closer to our present-day family ideal than the right of the parents to the 'earning capacity during minority,' which once seemed so important when the common law was originally established." *Id.* at 401.

In the instant case, we are faced with the reverse situation of that found in *Shockley*—that of the minor child's loss of the experiences normally shared with his or her father throughout childhood. In focusing upon the importance of the parent-child relationship in *Shockley*, this court utilized the following language:

"In the case at bar one needs little imagination to see the shattering effect that [the child's] blindness will have on the relationship between him and his parents. The loss of the enjoyment of those experiences normally shared by parents and children need no enumeration here." *Shockley v. Prier,* 66 Wis. 2d at 401–02.

Here, we are faced with circumstances where the father's mental and physical state, resulting from his extensive injuries, essentially deprives the minor children of any further parent-child exchange throughout the remainder of their childhood years. In *Shockley,* we spoke of protecting the "enjoyment" the parents experience in rearing their child as a normal child. However, what the Theama children have been deprived of goes beyond deprivation of the "enjoyment" of shared experiences with their father. It also involves the loss of the care, guidance, love, and protection of the father, as well as the absence of an essential role model in their lives. We are leery of any argument that this interest of the minor child is not as important or that it merits less protection than that of the parents in *Shockley.*

Numerous legal writers have recognized the seriousness of such a loss to the child because of negligent injury to the parent. Prosser has characterized the loss of the parents' "care, companionship, and education" as "a genuine injury, and a serious one." W. Prosser, *Handbook of the Law of Torts,* sec. 125 at 896 (4th ed. 1971). One law review comment has characterized the injury as follows:

"A child has an interest in the society and affection of his parent. Furthermore, the society, education, protection and love of a parent is necessary for the child's welfare and development. 'The child, for the full and harmonious development of his personality, needs love and understanding.' When the child is deprived of his parents' society, care, protection and affection he suffers a real injury. . . . Similarly, the child's loss of his parents' love, society and protection deprives him of the essentials for a healthy development and thus results in a real injury to the child.

"Protection of the child against this type of injury to the family relationship is equally important to the state. Since the character of the child has an impact on society 'it is of the highest importance to the child and society that its rights to receive the benefits derived from its mother [or father] be protected.' " Comment, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal,* 13 San Diego L. Rev. 231, 237–38 (1975) (footnotes omitted).

Another writer noted the following:

"In studies of families in which one of the parents was chronically or physically ill, the children had higher rates of illnesses themselves. Higher incidences of juvenile delinquency and psychiatric disorders were also evident." Comment, *The Child's Cause of Action for Loss of Consortium,* 5 San Fern. V.L. Rev. 449, 461 (1977) (footnotes omitted).

The writer draws the parallel between the effects of a chronically ill parent upon the child and the severely injured parent, concluding that there is a potential for adverse effects upon the child whose parent has been severely injured. *Id.,* n. 82. Therefore, it appears that the loss to the child is indeed a real and serious one and that the effects of this loss may be far-reaching. As the supreme court of Kansas noted,

" 'It is common knowledge that a parent who suffers serious physical or mental injury is unable to give his

minor children the parental care, training, love and companionship in the same degree as he might have but for the injury. Hence, it is difficult for the court, on the basis of natural justice, to reach the conclusion that this type of action will not lie. Human tendencies and sympathies suggest otherwise. Normal home life for a child consists of complex incidences in which the sums constitute a nurturing environment. When the vitally important parent-child relationship is impaired and the child loses the love, guidance and close companionship of a parent, the child is deprived of something that is indeed valuable and precious. No one could seriously contend otherwise.' " *Id.* at 462, citing *Hoffman v. Dautel,* 189 Kan. 165, 168, 368 P.2d 57, 59 (1962).

Furthermore, while an adult is capable of seeking out new relationships in an attempt to fill in the void of his or her loss, a child may be virtually helpless in seeking out a new adult companion. Therefore, compensation through the courts may be the child's only method of reducing his or her deprivation of the parent's society and companionship. *See,* 56 B.U.L. Rev. at 742.

We have reached the point in our society's development where children are being acknowledged as persons deserving of legal rights and protections. Our own children's code contains the following express legislative purposes:

"(a) To provide judicial and other procedures through which children . . . are assured fair hearings and their constitutional and other legal rights are recognized and enforced, . . .

"(b) To provide for the care, protection and wholesome mental and physical development of children, preserving the unit of the family whenever possible.

". . .

"(g) To provide children in the state with permanent and stable family relationships. . . ." Section 48.01(1), Stats.

Society's increasing awareness of the child's humanity has prompted the extension of numerous legal rights. The

United States Supreme Court has acknowledged that children are persons under the constitution. *See, Tinker v. Des Moines School Dist.*, 393 U.S. 503 (1969). Children are now recognized as possessing first amendment rights[2] and have been afforded the protection of the fourteenth amendment's due process[3] and equal protection clauses.[4]

The Supreme Court has also recognized the importance of family relationships. *See, Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). The Court has characterized its view of the nuclear family as follows:

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), 'basic civil rights of man,' *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942), and '[r]ights far more precious . . . than property rights,' *May v. Anderson*, 345 U.S. 528, 533 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska, supra,* at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma, supra,* at 541, and the Ninth Amendment, *Griswold v. Connecticut*, 381 U.S. 479, 496 (1965) (Goldberg, J., concurring)." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

This court has also recognized the family's importance in the area of the termination of parental rights. The termination of a parent's rights has been characterized by this court as involving a "fundamental right," through the use of the following language:

---

[2] *See, Board of Education v. Barnette*, 319 U.S. 624 (1943).

[3] *See, Goss v. Lopez*, 419 U.S. 565 (1975); *In re Winship*, 397 U.S. 358 (1970); and *In re Gault*, 387 U.S. 1 (1967).

[4] *See, Brown v. Board of Education*, 347 U.S. 483 (1954). *See also,* Note, *The Child's Right to Sue*, 56 B.U.L. Rev. at 742–43.

"At stake is the parent's interest in the companionship, care, custody, and management of his or her child. This court has recognized that these interests are 'cognizable and substantial' and that the integrity of the family is subject to constitutional protection through the due process clause of the state and federal constitutions. *In Interest of J.L.W.*, 102 Wis. 2d 118, 132, 133, 136, 306 N.W.2d 46 (1981)." *In Interest of D.L.S.*, 112 Wis. 2d 180, 184, 332 N.W.2d 293 (1983).

Therefore, it appears to us that when we combine the three elements discussed thus far—that of the importance of the family unit in our society, the increasing recognition of the child as a person deserving of constitutional rights and protection by the courts, and the necessity of the parent's love, care, education and protection in contributing to the wholesome and complete development of the child—it would be contrary to justice to deny the gravity of harm suffered by a child who is deprived of his or her parent's society and companionship due to another's negligence.[5]

The defendants argue that there is no precedent in Wisconsin case law to recognize such a cause of action on the part of a minor child. However, as one Michigan court appropriately stated, when faced with the issue of whether to allow recovery by a woman for negligent injury to her husband,

"Were we to rule upon precedent alone, were stability the only reason for our being, we would have no trouble with this case. We would simply tell the woman to be-gone, and to take her shattered husband with her, that

---

[5] As Dean Pound noted in 1916, "As against the world at large a child has an interest . . . in the society and affection of the parent. . . . But the law has done little to secure these interests. . . . It will have been observed that legal securing of the interests of children falls far short of what general considerations would appear to demand." Pound, *Individual Interests in the Domestic Relations*, 14 Mich. L. Rev. 177, 185–86 (1916) (footnotes omitted).

we need no longer be affronted by a sight so repulsive. In so doing we would have vast support from the dusty books. But dust the decision would remain in our mouths through the years ahead, a reproach to law and conscience alike. Our oath is to do justice, not to perpetuate error." *Montgomery v. Stephan*, 359 Mich. 33, 37–38, 101 N.W.2d 227 (1960).

It would not be difficult for this court to deny these children a cause of action. We could easily adopt the trial court's reasoning that because the children would have no action under the wrongful death statute because their mother survived, surely they should have no such claim when their father survives, in spite of the fact that his present condition robs them of the normal father-child experiences. *Cogger v. Trudell*, 35 Wis. 2d 350. However, in *Cogger*, this court recognized that a cause of action for wrongful death is solely dependent upon the statute for its existence, the wrongful death action being a creature of the legislature. *Id*. at 353. But we have also recognized that the rule denying recovery for the loss of society and companionship was created by the courts and not the legislature, and it is, therefore, as much our duty as the legislature's to change that law if it no longer meets society's needs. *Shockley v. Prier*, 66 Wis. 2d at 397. Also, we find analogous precedent for the child's right to recover for loss of the parent's society and companionship in our earlier decisions of *Moran* and *Shockley*. Our decisions protected the emotional or sentimental aspects of the husband-wife relationship and the parents' interests in rearing their child. It is only logical that the next step in this progression is to protect the child's interest in the parent-child relationship.

Accordingly, we hold that a minor child may recover for the loss of care, society, companionship, protection, training, and guidance of a parent due to the negligent

acts of a third party. We believe that such a result is mandated by our oath to do justice, as well as our conscience.

The defendants point out that numerous jurisdictions have denied such a cause of action.[6] We note that not all of these decisions are recent ones and that it was only in 1967 that this court recognized the wife's right to recover for the loss of her husband's consortium in *Moran*. However, after weighing the competing policy considerations surrounding the recognition of such a cause of action, we are persuaded by the rationale found in the decisions of those jurisdictions choosing to recognize the child's cause of action. *See, Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); and *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980).

First, we note that numerous jurisdictions deny such a cause of action on the basis that the recognition of such a right should be addressed by the legislature. *See, Norwest v. Presbyterian Intercom. Hosp.,* 52 Or. App. at

---

[6] *See, Early v. United States,* 474 F.2d 756 (9th Cir. 1973); *Borer v. American Airlines, Inc.,* 19 Cal. 3d 441, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); *Pleasant v. Washington Sand & Gravel Co.,* 262 F.2d 471 (D.C. Cir. 1958); *Clark v. Suncoast Hospital, Inc.,* 338 So. 2d 1117 (Fla. Dist. Ct. App. 1976); *Halberg v. Young,* 41 Hawaii 634 (1957); *Koskela v. Martin,* 91 Ill. App. 3d 568, 414 N.E.2d 1148 (1980); *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57 (1962); *Eschenbach v. Benjamin,* 195 Minn 378, 263 N.W. 154 (1935); *Hoesing v. Sears, Roebuck & Co.,* 484 F Supp 478 (D. Neb. 1980); *General Electric Company v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Transportation Company,* 61 N.J. 502, 295 A.2d 862 (1972); *Duhan v. Milanowski,* 75 Misc. 2d 1078, 348 N.Y.S. 2d 696 (Sup. Ct. 1973); *Morgel v. Winger,* 290 N.W.2d 266 (N.D. 1980); *Gibson v. Johnston,* —— Ohio App. ——, 144 N.E.2d 310 (1956); *Norwest v. Presbyterian Intercom. Hosp.,* 52 Or. App. 853, 631 P.2d 1377 (1981); *Turner v. Atlantic Coast Line R. Co.,* 159 F. Supp. 590 (N.D. Ga. 1958); *Erhardt v. Havens, Inc.,* 53 Wash. 2d 103, 330 P.2d 1010 (1958). *See also,* Annot., 69 A.L.R.3d 528.

856–60, 631 P.2d at 1380; *Morgel v. Winger*, 290 N.W.2d at 267; and *Koskela v. Martin*, 91 Ill. App. 3d at 571. However, we believe that such an argument ignores the fact that the cause of action for loss of consortium was initially created and developed by the courts. 56 B.U.L. Rev. at 729; *Weitl v. Moes*, 311 N.W.2d at 266. As we stated in the *Shockley* decision,

"The rule against such recovery was created by the courts and not the legislature and it is as much our responsibility, as the legislature's, to make changes in the law, if the common-law rule no longer fits the social realities of the present day." *Shockley v. Prier*, 66 Wis. 2d at 397.

We also note that in neither the *Moran* nor *Shockley* decision did we await legislative creation of the respective causes of action on behalf of the wife and parents. Therefore, we believe that deferral to the legislature in this instance would be shirking our responsibility.[7]

The second argument we encounter in those decisions which deny the child's right to recover for such a loss concerns the uncertainty of the damages. *See, Hoesing v. Sears, Roebuck & Co.*, 484 F. Supp. at 480; *Koskela v. Martin*, 91 Ill. App. 3d at 571; and *Borer v. American Airlines, Inc.*, 19 Cal. 3d at 449. However, McCormick has stated the following concerning denial of relief because of uncertainty of damages, which we believe is clearly applicable to the instant case.

" 'Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person,

---

[7] "Courts have a creative job to do when they find that a rule has lost its touch with reality and should be abandoned or reformulated to meet new conditions and new moral values". Traynor, *Law and Social Change in a Democratic Society*, 1956 U. Ill. L.F. 230, 232.

and thereby relieve the wrongdoer from making any amend for his acts.' " C. McCormick, *Law of Damages,* sec. 27 at 102 (1935) (citation omitted). *See also,* 13 San Diego L. Rev. at 246–47.

Similarly, we note that recovery for pain and suffering is allowable in personal injury[8] and wrongful death actions,[9] for loss of consortium of a spouse in personal injury suits,[10] for loss of the spouse's society and companionship in a wrongful death action,[11] and for loss of a minor child's society and companionship in personal injury[12] and wrongful death actions.[13] These elements appear to involve damages which are by nature as intangible as those for the loss of a parent's society and companionship. Yet courts and juries daily assess such uncertainties, with apparent success.[14]

Similar to the above argument, courts have also disallowed the child's cause of action on the basis that it is of a "noncompensatory" nature. *See, Hoesing v. Sears, Roebuck & Co.,* 484 F. Supp. at 479; and *Borer v. American Airlines, Inc.,* 19 Cal. 3d at 447–48. As the *Borer* court determined,

[8] *Sennott v. Seeber,* 6 Wis. 2d 590, 95 N.W.2d 269 (1959).

[9] *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 294 N.W.2d 437 (1980).

[10] *Moran v. Quality Aluminum Casting Co.,* 34 Wis. 2d 542; and *Ballard v. Lumbermens Mut. Casualty Co.,* 33 Wis. 2d 601, 148 N.W.2d 65 (1967).

[11] *Herro v. Steidl,* 255 Wis. 65, 37 N.W.2d 874 (1949).

[12] *Shockley v. Prier,* 66 Wis. 2d 394.

[13] *Peot v. Ferraro,* 83 Wis. 2d 727, 266 N.W.2d 586 (1978).

[14] We note that other jurisdictions are following the trend of allowing recovery of nonpecuniary losses, in spite of the intangible nature of these awards. *See, Dawson v. Hill & Hill Truck Lines,* — Mont. —, 671 P.2d 589 (1983), where the court allowed damages for sorrow, mental distress, or grief of the parents of a deceased minor child in a wrongful death action. *See also, Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983), where damages for mental anguish were permitted in a wrongful death action by parents for the death of their minor child.

"Loss of consortium is an intangible, nonpecuniary loss; monetary compensation will not enable plaintiffs to regain the companionship and guidance of a mother; it will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal guidance, they will be unusually wealthy men and women. To say that plaintiffs have been 'compensated' for their loss is superficial; in reality they have suffered a loss for which they can never be compensated; they have obtained, instead, a future benefit essentially unrelated to that loss." *Id.*, 19 Cal. 3d at 447–48.

We are unswayed by such an argument. Although a monetary award may be a poor substitute for the loss of a parent's society and companionship, it is the only workable way that our legal system has found to ease the injured party's tragic loss. We recognize this as a shortcoming of our society, yet we believe that allowing such an award is clearly preferable to completely denying recovery. Such was the basis for allowing the wife to recover for loss of her husband's consortium in *Moran*, and the parents for loss of their child's aid, comfort, society, or companionship in *Shockley*.[15] Also, we believe that money may indeed ease the child's adjustment to such a loss, rather than merely ensuring that he or she becomes a wealthy individual upon reaching majority, and may also aid in ensuring the child's continued normal and complete mental development into adulthood. As one writer proposed,

"Compensation awarded the child might enable the family to obtain live-in help that could provide not only domestic services, but, incidentally, a measure of guidance and companionship. The child who has suffered an

---

[15] We note that California also denied recovery of the parents for loss of the child's "support, comfort, protection, society, and pleasure" due to injuries sustained as the result of another's negligence in *Baxter v. Superior Court of Los Angeles Cty.*, 19 Cal. 3d 461, 465, 563 P.2d 871, 138 Cal. Rptr. 315 (1977), which was a companion case to the *Borer* decision.

emotional maladjustment as a result of his deprivation would have funds available to pay for needed psychiatric treatment. It is not unrealistic to assume that in many cases monetary compensation could make the difference between a child who suffers a permanent handicap due to the loss of a parent's love and guidance and a child who is able to make a reasonable adjustment to his loss." 56 B.U.L. Rev. at 734 (footnotes omitted).

Therefore, we believe that denying the child's right to recover premised upon the belief that loss of a parent's society and companionship is irreplaceable would most certainly amount to a perpetuation of error. Permitting the child separate recovery also guarantees that the award will be utilized for the child's benefit and not by the parent for other purposes. *See, Weitl v. Moes,* 311 N.W.2d 259.

The third major argument against allowing such a cause of action is that of an increasing number of parties who will be entitled to recover when a person is negligently injured by another, which will be reflected by an accompanying increase in the defendant's liability. As the *Borer* court forewarned, the injured victim may have siblings, friends, relatives, etc., who may potentially be deprived of the injured party's society and companionship, and the line limiting liability must be drawn somewhere. *Borer v. American Airlines, Inc.,* 19 Cal. 3d at 447. However, we believe that this argument ignores the importance of the *nuclear* family in present-day society, as well as the factor of foreseeability. This court has absolutely no difficulty in limiting such a cause of action to the two relationships likely to be most severely affected by a negligent injury to a parent, namely, the husband-wife relationship, and that of the parent and minor child. *See, Weitl v. Moes,* 311 N.W.2d at 266. As one writer noted,

"The distinction between the interests of children and those of other relatives is rational and easily applied.

Most children are dependent on their parents for emotional sustenance. This is rarely the case with more remote relatives. Thus, by limiting the plaintiffs in the consortium action to the victim's children, the courts would ensure that the losses compensated would be both real and severe." 56 B.U.L. Rev. at 738 (footnote omitted).[16]

The argument which appears to go hand in hand with that of increased liability to the defendant concerns the social burdens which will result from recognizing the child's cause of action in the form of increased insurance premiums. However, we believe that any burden to society is offset by the benefit to the child, who through compensation may be able to adjust to his or her loss with stability. Ultimately, society will benefit as well, since ideally the child will become a normal adult who is capable of functioning as such in his or her own social setting. *See, Berger v. Weber,* 411 Mich. at 14. As one writer noted, "The family relationship 'is the relationship on which all society must depend for endurance, permanence, and well-being.'" 56 B.U.L. Rev. at 741 (footnote omitted).

The fourth major argument against allowing the child's cause of action for the loss of the parent's society and companionship concerns the fear of multiple claims and increased litigation. *See, Hoesing v. Sears, Roebuck & Co.,* 484 F. Supp. 478; *Koskela v. Martin,* 91 Ill. App. 3d at 572; and *Borer v. American Airlines, Inc.,* 19 Cal. 3d at 445. Because each child of an injured parent would possess his or her own cause of action, multiple

---

[16] *See also,* 56 B.U.L. Rev. at 738, n. 124, where the writer notes that it is foreseeable that a child will be severely emotionally impaired by a serious injury to the parent, whereas it is not usually expected that a relative or friend will experience such an impairment. Therefore, the writer concludes that imposing on the defendant a duty to avoid the loss to the child is reasonable under the theory of foreseeability.

lawsuits could potentially arise from one occurrence. However, we note that in the instant case, the claims of the minor children were combined with those of the father and mother. Therefore, the issue of multiple claims is not before us in this case. Also, we note that the fear of an increase in litigation has been voiced in almost every instance where the courts have been asked to recognize a new cause of action. 56 B.U.L. Rev. at 732. As a result, we feel that this argument does not merit any weight.

The final argument utilized in denying the child's recovery concerns the fear of double recovery. Other jurisdictions have reasoned that the injured parent may recover for loss of future earnings which relates to the parent's ability to care for his or her family. These courts have expressed the opinion that juries may take into account the child's loss of the parent's ability to support the child when determining the child's claim for loss of society and companionship. Thus, it is feared that an overlap of damages awarded the parent and the child may result. *Koskela v. Martin*, 91 Ill. App. 3d at 571. *See also, Hoesing v. Sears, Roebuck & Co.*, 484 F. Supp. at 480; *Borer v. American Airlines, Inc.*, 19 Cal. 3d at 449; and *Russell v. Salem Transportation Company*, 61 N.J. at 507.

We believe that this argument lacks any persuasive value, because the same situation occurs when the wife sues for loss of her husband's consortium. *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542. The problem may be easily cured by limiting the injured parent's recovery to the child's loss of the parent's pecuniary ability to support the child. Similarly, the child's cause of action can be limited to the loss of the parent's society and companionship.

Accordingly, we conclude that the reasons for allowing the child's cause of action for loss of a parent's society and companionship resulting in another's negligence clearly outweigh the reasons for disallowing such an action. *Shockley v. Prier,* 66 Wis. 2d at 402.

Lastly, we are faced with the characterization of this newly created cause of action. Clearly, the cause encompasses that of an injury to a primary tort victim, the parent, and that to the child as a secondary tort victim. In the past, we have utilized the concepts of "separate" and "derivative" claims to determine the rights of secondary tort victims. However, this court has concluded that these labels are not particularly useful, and the preferred approach is to examine the context in which the secondary victim's claim arose. *Korth v. American Family Insurance Co.,* 115 Wis. 2d 326, 331–32, 340 N.W.2d 494 (1983) ; and *Wangen v. Ford Motor Co.,* 97 Wis. 2d at 316. Accordingly, we hold that there does not appear to be any reasonable basis for treating the parent's claim for personal injuries differently from that of the child for loss of society and companionship in the context of proving a *prima facie* case. The child will have to establish negligence on the part of the defendant which resulted in injury to the parent. As to defenses, the child's claim will be barred, or the amount permitted by recovery reduced, by any defenses utilized against the injured parent, such as contributory negligence.

In summary, then, we hold that the child may bring a cause of action for the loss of a parent's society and companionship resulting from another's negligence. We presently limit recovery under this cause of action to the child's minority, because the minor is one whose relationship is most likely to be severely affected by a negligent injury to the parent. 56 B.U.L. Rev. at 738.

We also believe that this comports with our opinion in the *Shockley* case, which limited the parent's recovery for loss of the child's aid, comfort, society, and companionship to the child's minority. *Shockley v. Prier,* 66 Wis. 2d at 401.

As with the *Shockley* decision, we acknowledge that this newly created cause of action may be expanded by the legislature, or that it may abolish the right or set a ceiling on the amount recoverable, similar to the wrongful death statute.[17] *Shockley v. Prier,* 66 Wis. 2d at 403–04. The change in the rule announced in this opinion is to be limited to causes of action arising on or after March 8, 1984, the date of the filing of this opinion, except that it is to be applicable to the instant case.

*By the Court.*—The order of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.

---

[17] *See,* sec. 895.04(4), Stats., where the legislature has limited damages for loss of society and companionship in wrongful death actions to $25,000.