Timothy CONANT, Plaintiff,

Rowley CONANT and Kay Conant, Plaintiffs-Appellants,

STATE of Wisconsin, Subrogated-Party,

v.

PHYSICIANS PLUS MEDICAL GROUP, INC., Debra Wendt, Dr. Thomas Saari, Jan Sydow, and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 98–3285. Submitted on briefs April 15, 1999.—Decided July 1, 1999.*

(Also reported in 600 N.W.2d 21.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Richard J. Auerbach* of *Auerbach & Porter* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Stephen O. Murray* of *Otjen, Van Ert, Lieb & Weir, S.C.* of Madison, and briefs of *Kathleen E. Bonville* and *Sharon R. Long* of *Gutglass, Erickson & Bonville, S.C.* of Milwaukee.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J.   Rowley and Kay Conant appeal a summary judgment dismissing their claims against Physicians Plus Medical Group, Meriter Hospital, and several of their employees and insurers. The Conants were the legal guardians of a minor child, Timothy, who they allege was seriously injured by the medical malpractice of health care providers at Physicians Plus Medical Group and Meriter Hospital. The Conants sought to recover for their loss of Timothy's society and companionship and for certain costs they incurred and income they lost on account of Timothy's injuries. We conclude that under Wisconsin law, legal guardians may not recover for the loss of society and companionship of their ward. We also conclude that legal

guardians may not bring a separate claim against an alleged tortfeasor for costs they incur or income they lose on account of injuries to their ward. Accordingly, we affirm the summary judgment dismissing the Conants from the suit.

## BACKGROUND

This medical malpractice action arises from injuries suffered by Timothy Conant, a minor. At the time of Timothy's injuries, Rowley and Kay Conant, Timothy's grandparents, were also his legal guardians. The Conants have since adopted Timothy, but the parties agree that the subsequent adoption does not affect the Conants' rights in this suit, which are determined by the Conants' status at the time of Timothy's injuries. *Cf. Denil v. Integrity Mut. Ins. Co.*, 135 Wis. 2d 373, 401 N.W.2d 13 (Ct. App. 1986).

According to the Conants' complaint, Timothy's injuries occurred as he underwent a course of antibiotic treatment for an ear infection. After receiving the antibiotic, he began vomiting repeatedly. The complaint alleges that Timothy's health care providers did not adequately respond to reports of Timothy's vomiting, and that consequently, his vomiting continued untreated for several days. Ultimately, Timothy suffered severe brain damage, allegedly as a consequence of severe dehydration caused by his vomiting.

The Conants, as Timothy's representatives, filed this malpractice action in Timothy's name against his health care providers and their insurers. The Conants also sued in their own names to recover for the loss of Timothy's society and companionship, the costs they incurred in transporting Timothy to his health care providers after his injuries, and for the income Mrs. Conant lost in reducing her work hours to care for

him.[1] The trial court granted summary judgment against the Conants, concluding that as guardians, the Conants had no cognizable claim deriving from the injuries to Timothy, their ward. Timothy's own claims for his injuries are awaiting trial. In this appeal the Conants contest the summary judgment dismissing them from the case.

## ANALYSIS

We review the trial court's grant of summary judgment using the same methodology as the trial court. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97, 536 N.W.2d at 182; *see also* § 802.08(2), Stats.

The Conants do not argue that the viability of their separate claims depends upon any disputed fact. The decisive question here is thus one of law: whether the Conants, as Timothy's guardians, have a cause of action for their own losses deriving from Timothy's injuries. We review this legal question de novo, benefiting however from the trial court's analysis. *See State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476, 478 (Ct. App. 1998). We conclude that Wisconsin law does not recognize such claims by a guardian. Because the Conants have not stated a cognizable claim against any

[1] The bulk of Timothy's medical expenses were covered by medical assistance, and the Conants named the State of Wisconsin as a subrogated party with respect to the medical assistance provided. *See* § 49.89(2), Stats.

of the defendants, summary judgment dismissing their claims was proper.

The Conants' claims are governed by ch. 655, STATS., which deals with medical malpractice claims in Wisconsin. Chapter 655 does not, however, expressly define who may pursue a claim for the loss of society and companionship of a person injured as a result of malpractice.[2] *See Wells Estate v. Mt. Sinai Med. Ctr.*, 183 Wis. 2d 667, 674, 515 N.W.2d 705, 708 (1994). Generally, the question of who may recover for the loss of society and companionship of a person injured or killed by the negligent act of another has been left to the courts. *See Shockley v. Prier*, 66 Wis. 2d 394, 397, 225 N.W.2d 495, 497 (1975).

Wisconsin courts have, so far, limited recovery for loss of society and companionship to members of the injured person's "nuclear family." *See Wells Estate*, 183 Wis. 2d at 677, 515 N.W.2d at 709. Historically, the right to recover for injuries to or the death of a family member was vested in the husband or father. *See Theama v. City of Kenosha*, 117 Wis. 2d 508, 511–13, 344 N.W.2d 513, 514–15 (1984) (tracing history of cause of action for loss of society and companionship); *see also The Law of Damages in Wisconsin* (R. Ware ed., 2d ed. 1994–95) § 14.5. In more recent cases involving injuries to family members, however, Wisconsin courts have recognized the importance of the emotional, and not merely the economic, value of intimate family relationships. *See Shockley*, 66 Wis. 2d at 400–05, 225 N.W.2d at 499–501. Accordingly, Wisconsin courts have extended the availability of claims for loss of soci-

---

[2] Chapter 655, STATS., has been amended recently to permit a minor sibling of a person who dies as a result of malpractice to recover for loss of society and companionship. *See* 1997 Wis. Act 89 (creating § 655.016, STATS.).

ety and companionship to those who would suffer most severely the loss of an intimate family relationship: either spouse, the parents of an injured minor child, and the minor children of a parent injured or killed. *See Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 150 N.W.2d 137 (1967) (either spouse); *Shockley* (parents of injured minor child); *Theama* (minor children of injured parent); *Rineck v. Johnson*, 155 Wis. 2d 659, 456 N.W.2d 336 (1990) (minor children of parent killed as a result of medical malpractice), *overruled on other grounds by Chang v. State Farm Mut. Auto Ins. Co.*, 182 Wis. 2d 549, 514 N.W.2d 399 (1994).

Neither Wisconsin courts nor the legislature, however, has permitted recovery for loss of society and companionship by those outside the nuclear family. *See Garrett v. City of New Berlin*, 122 Wis. 2d 223, 238, 362 N.W.2d 137, 145 (1985) (rejecting claim by stepfather of injured child); *Denil v. Integrity Mut. Ins. Co.*, 135 Wis. 2d 373, 401 N.W.2d 13 (Ct. App. 1986) (denying claim by fiancee who married injured person two months after injuries occurred). Wisconsin courts have also determined that adult children do not have a cause of action for the loss of society and companionship of a parent, nor do parents have such a claim with respect to their adult children. *See Dziadosz v. Zirneski*, 177 Wis. 2d 59, 501 N.W.2d 828 (Ct. App. 1993); *Wells Estate v. Mt. Sinai Med. Ctr.*, 183 Wis. 2d 667, 515 N.W.2d 705 (1994). Rejecting claims by those outside the nuclear family of the injured person for loss of society and companionship, the supreme court has explained, "is consistent with the equitable goal of allowing recovery in the most compelling cases without subjecting either the tortfeasor, or society in general, to an expanding and perhaps intolerable degree of liabil-

ity." *Wells Estate,* 183 Wis. 2d at 681, 515 N.W.2d at 711.

The Conants contend that they should be permitted to recover for the loss of Timothy's society and companionship because, as Timothy's guardians entrusted with his legal custody, they are in substantially the same position as parents. The Conants argue that, unlike the stepparent, fiancee and parents of an adult child, whose claims were rejected in *Garrett, Denil* and *Wells Estate,* they had a legal duty to provide care to their injured ward. The Conants also argue that permitting them to claim the loss of Timothy's society and companionship would not substantially increase the liability to which tortfeasors would be exposed. We are not persuaded. The status of legal guardian differs from that of parent in substantial ways that militate against permitting a legal guardian to recover for the loss of society and companionship of the ward.

First, the legal guardian's duty to the ward is qualitatively different from the parent's duty to the child, even though the legal guardian has duties that parallel parental obligations in many regards. As the Conants argue, under § 48.023, STATS., they have the "duty to be concerned about the child's general welfare," and that duty generally includes "the rights and responsibilities of legal custody." Section 48.023(4), STATS. Legal custody is defined as

> a legal status created by the order of a court, which confers the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care, subject to the rights, duties and responsibilities of the guardian of the child and subject to any residual parental rights and

responsibilities and the provisions of any court order.

Section 48.021(12), STATS.

Although we agree that ch. 48, STATS., imposes significant duties on the legal guardian of a minor ward, particularly when the guardian is also charged with the responsibility of legal custody, the duties of legal guardianship are nevertheless not equivalent to the duties of parenthood. First, the duties of the legal guardian are "subject to any residual parental rights and responsibilities." Section 48.021(12), STATS. As the Conants acknowledge, Timothy's parents retained the right to sue for the loss of his society and companionship, although the value of the parental claim may well have been diminished as a factual matter, given Timothy's custodial circumstances.[3] Second, legal guardians may recover the costs they incur in providing custodial care to their ward. Under § 880.24, STATS.,[4] the legal guardian is entitled to recover from the estate of the ward the "reasonable expenses

---

[3] It appears from the record that Timothy's mother was living at the time he suffered his injuries in December 1991, and that his father may also have been living at the time. The record contains no explanation as to why the Conants sought and obtained guardianship of Timothy, or of what role his parents may have played in his life prior to and after he sustained his injuries.

[4] Section 880.24(1), STATS., provides:

(1) FEES AND EXPENSES OF GUARDIAN. Every guardian shall be allowed the amount of the guardian's reasonable expenses incurred in the execution of the guardian's trust including necessary compensation paid to attorneys, accountants, brokers and other agents and servants. The guardian shall also have such compensation for the guardian's services as the court, in which the guardian's accounts are settled, deems to be just and reasonable.

incurred in the execution of the guardian's trust." The guardian is also entitled, under § 880.24, to "compensation for the guardian's services as the court . . . deems to be just and reasonable." *See also* § 880.21, STATS. (authorizing guardian to apply ward's property and income "for the suitable education, maintenance and support of the ward"). Parents have no comparable opportunity to be reimbursed for the expenses incurred in caring for their children or to be compensated for their services as custodians and caregivers.

The second significant way in which a guardianship differs from parenthood is that a legal guardianship is inherently more mutable than parenthood, even if the guardianship is "permanent" rather than temporary. A permanent guardianship, unlike a temporary guardianship under § 880.15, STATS., lacks a specific termination date, other than the date a minor ward attains the age of majority.[5] Nevertheless, a so-called "permanent" guardian may be removed for the reasons specified in § 880.16, STATS., including for cause and at the request of a ward who has attained the age of fourteen. More significant, a legal guardian may voluntarily relinquish his or her duties by simply resigning as guardian with the court's approval. *See* § 880.17, STATS. Parental rights may be

---

[5] Section 880.26, STATS., provides that guardianships of the person and estate of a minor generally terminate when the minor attains majority, marries or dies. Section 48.977(7)(a), STATS., however, provides that guardians appointed under that section may be appointed "for a lesser period of time." (Section 48.977 was created by 1995 Wis. Act 275, and was not in effect when the Conants became Timothy's guardians on October 16, 1991.)

terminated only by the considerably more elaborate procedures specified in §§ 48.40–.46, STATS.[6]

Third, the status of legal guardian is not exclusive: a minor ward may have guardians as well as parents, each of whom could claim the loss of the injured minor's society and companionship. Thus, permitting legal guardians to recover for loss of the ward's society and companionship would necessarily increase the number of potential claimants. The Conants argue that their claims as legal guardians would pose no more risk of excessive liability than would the claims of multiple minor children and a spouse, which would be allowed under current law. Nevertheless, the supreme court has expressed its unwillingness to expand the pool of potential claimants: "This court has absolutely no difficulty in limiting such a cause of action to the two relationships likely to be most severely affected by a negligent injury to a parent, namely, the husband-wife relationship, and that of the parent and minor child." *Theama*, 117 Wis. 2d at 524, 344 N.W.2d at 521. Although the legislature has intervened in this area to permit the minor siblings of a deceased person to recover for loss of society and companionship in a malpractice action, *see* § 655.016, STATS., neither the courts nor the legislature has indicated a willingness to

---

[6] Parental rights may be terminated involuntarily upon proof by clear and convincing evidence that statutory grounds for termination exist. *See* §§ 48.415, .42, and .424, STATS. Although a parent may voluntarily consent to the termination of his or her parental rights, *see* § 48.41, STATS., a court may only order termination after considering the best interests of the child, including such factors as the likelihood of adoption following termination. *See* § 48.426, STATS. The court may also decline to order termination if it concludes that termination of parental rights is not warranted. *See* § 48.427(2), STATS.

extend this cause of action beyond the limits of the nuclear family.

In sum, a legal guardianship differs from parenthood in substantial ways that are relevant to whether a legal guardian should be able to recover for the loss of society and companionship of a minor ward. In light of the supreme court's expressed reluctance to expand the availability of a cause of action for loss of society and companionship, we conclude that current law does not recognize such a claim on behalf of an injured minor's legal guardian. As both this court and the supreme court have acknowledged, such a rule may work harsh results in individual cases. But insofar as the Conants ask us to extend existing law to ameliorate this harsh result, it is not our prerogative to do so. *See Wells Estate v. Mt. Sinai Med. Ctr.*, 174 Wis. 2d 503, 512, 497 N.W.2d 779, 783 (Ct. App. 1993), *aff'd,* 183 Wis. 2d 667, 515 N.W.2d 705 (1994) (concluding that this court is not the proper forum "to alter and expand upon what the supreme court has previously decided," and that the question of allowing persons other than members of the nuclear family to sue for loss of companionship "is a question more appropriately addressed to the legislature or the supreme court").

The Conants also seek to recover certain costs they incurred and income they lost on account of Timothy's injuries. As the trial court noted, whether the Conants should be allowed to proceed separately to recoup these items is a closer question than the one we have addressed above. The defendants assert that neither the cost of transporting Timothy for medical care nor the income lost by a person who provides care to an injured child are recoverable medical expenses. The supreme court has suggested, however, that both

transportation costs and the value of a caregiver's services are recoverable from a tortfeasor as medical expenses by the husband of an injured wife, although the latter is to be measured by its "reasonable and customary cost" rather than the caregiver's opportunity cost. *See Redepenning v. Dore,* 56 Wis. 2d 129, 136–37, 201 N.W.2d 580, 584–85 (1972).

The question before us, however, is not whether the items the Conants seek to recover are allowable items of damages; rather, it is whether the Conants can sue in their own names to recover those items. We conclude that they cannot.

The Conants have not cited, nor have we found, either statutory authority for such a claim by guardians proceeding in their own name, or any Wisconsin case in which a guardian (or any relative other than a parent) has been permitted to sue to recover medical expenses incurred on behalf of an injured child. Chapter 655, STATS., governing medical malpractice claims, does not expressly indicate who may recover medical expenses incurred on account of medical malpractice. Although the stepfather in *Garrett* had sought to recover medical expenses as well as damages for loss of society and companionship, we did not decide the question of whether he could recover his out-of-pocket expenses in providing medical care to his stepchild. *See Garrett,* 122 Wis. 2d at 238 n.2, 363 N.W.2d at 145.

The general rule in Wisconsin is that a parent may recover medical expenses incurred on behalf of an injured child so long as the parent is personally liable for those expenses. *See, e.g., Thoreson v. Milwaukee & Suburban Transp. Corp.,* 56 Wis. 2d 231, 241–42, 201 N.W.2d 745, 751 (1972); *see generally The Law of Damages, supra,* at § 9.13. As the Conants point out, and as we have discussed above, they were obligated to ensure

that Timothy received "ordinary medical care." *See* § 48.021(12), STATS. The Conants do not, however, cite any authority for the proposition that they were personally liable, as Timothy's guardians, for the cost of medical care rendered to him. To the contrary, as we have also discussed, the statutes governing the duties and responsibilities of guardians suggest otherwise, in that guardians may be reimbursed for expenses and compensated for services from their ward's estate. *See* §§ 880.21 and .24, STATS.

The Conants' assertion that they should be allowed to directly recover from a tortfeasor their costs and expenses related to Timothy's injuries is based on their argument that, as guardians, they assumed a parent-like role. We have rejected that argument as a basis for allowing the Conants' claims. We now consider briefly whether the Conants might be able to bring their medical expense claim under another theory relating to third-party recoveries from a tortfeasor: subrogation.

"The general rule is that 'subrogation rests on the equitable principle that one, *other than a volunteer*, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent that he has paid a debt or demand which should have been paid by the wrongdoer.' " *Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 606, 511 N.W.2d 855, 864 (1994) (emphasis added). As we have noted, the Conants' status as Timothy's guardians is voluntary and terminable, and we have not been persuaded that they were personally obligated for the cost of medical care provided to Timothy. Unlike parents who may not shed the legal obligation to be responsible for the costs of care and medical services rendered to their minor children,

guardians may resign and be relieved of any duties and responsibilities to the ward.

We conclude, therefore, that the Conants may not maintain an action in their own names to recover their expenses in providing care and transportation for Timothy following his injuries. This does not mean that the alleged tortfeasors will escape liability for these costs. Should Timothy prevail in his action, he may recover those expenses from the defendants. An injured party is entitled to recover the reasonable value of medical and nursing services from a wrong-doer; and that recovery may not be reduced by the fact that the services were gratuitously paid for or provided by a collateral source. *See McLaughlin v. Chicago, Milwaukee, St. Paul & Pac. R.R.*, 31 Wis. 2d 378, 395–96, 143 N.W.2d 32, 40–41 (1966). The Conants may then seek reimbursement for the expenses from Timothy's estate.[7]

---

[7] As we have discussed, guardians may apply a ward's income and property for the "maintenance and support of the ward," § 880.21(1), STATS., and they may be allowed their "reasonable expenses incurred in the execution of the guardian's trust," as well as "just and reasonable" compensation for their services, § 880.24(1), STATS. The trial court expressed concern in its ruling that the fact that the Conants were now Timothy's parents, and no longer his guardians, might preclude them from recovering their costs out of any settlement or award he may recover. We do not necessarily foresee an obstacle to the Conants' reimbursement, even though Timothy's prior guardianship has been terminated. Should Timothy obtain a significant sum by settlement or judgment, a guardianship of his estate would be re-established. *See* §§ 807.10, 880.03 and .04, STATS. The Conants could then seek approval from the court supervising the guardianship for reimbursement from

## CONCLUSION

For the foregoing reasons, we conclude that the Conants do not have a cognizable claim for relief in their own right. Accordingly, we affirm the summary judgment dismissing the Conants from Timothy's medical malpractice action.

*By the Court.*—Judgment affirmed.

---

Timothy's estate of the costs for transportation and care they provided to Timothy following his injuries.