The ESTATE OF Mary WELLS, by her personal
representative/administratrix, Charlotte Jeske,
Plaintiff,

Charlotte JESKE, Plaintiff-Appellant,†

v.

MOUNT SINAI MEDICAL CENTER, a/k/a Sinai Samaritan
Medical Center and/or Aurora Health Care, Mount
Sinai Campus, Daniel Wartinbee, M.D., Milwaukee
Orthopaedic Group, Ltd., Wisconsin Health Care
Liability Insurance Plan, The Professional Insurance
Company of Ohio, and Wisconsin Patients' Compensa-
tion Fund, Defendants-Respondents,

E. J. HUXLEY, M.D., Pulmonary Medicine Associates of
Milwaukee, The Medical Protective Company and
Milwaukee County Department of Health & Human
Services, Defendants.

Court of Appeals

*No. 92-0186. Submitted on briefs November 4, 1992.—Decided
February 16, 1993.*

(Also reported in 497 N.W.2d 779.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* by *William W. Ehrke* and *Shawn M. Govern,* of Milwaukee.

For the defendants-respondents Mount Sinai Medical Center, n/d/a Sinai Samaritan Medical Center and/ or Aurora Health Care, Mount Sinai Campus, and Wisconsin Health Care Liability Insurance Plan the cause was submitted on the briefs of *Otjen, Van Ert, Stangle, Lieb & Weir S.C.* by *Wayne Van Ert* and *Mark A. Grady,* of Milwaukee.

For the defendants-respondents Daniel Wartinbee, Milwaukee Orthopaedic Group, Ltd. and Professionals Insurance Company of Ohio the cause was submitted on the briefs of *Peterson, Johnson & Murray, S.C.* by *Mary Lee Ratzel,* of Milwaukee.

For the defendant-respondent Wisconsin Patients Compensation Fund the cause was submitted on the briefs of *Schellinger & Doyle, S.C.* by *James M. Fergal* and *Linda Vogt Meagher,* of Brookfield.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J.   This case involves an appeal from the trial court's partial summary judgment order against Charlotte Jeske. The trial court ruled that: (1) a parent of an adult child is not entitled to recover damages for the loss of society and companionship of the

child where he or she is allegedly injured by medical malpractice; (2) a parent is not entitled to recover damages for the negligent infliction of emotional distress derived from a child's injury where the parent is not within the range of ordinary physical peril due to the allegedly tortious activity; and, (3) where there is no basis for compensatory damages, an action for punitive damages cannot be maintained. Because we agree with the trial court's above statement of the law, we affirm the decision.

## I. BACKGROUND

Procedurally, this appeal arises from claims brought by Charlotte Jeske (Charlotte), the mother of Mary Wells (Mary), who died at the age of thirty-eight due to complications from multiple sclerosis. The Estate of Mary Wells has alleged various claims separate from those of Charlotte, and those claims are currently being stayed pending the outcome of this appeal.

Mary was afflicted by multiple sclerosis at the age of twenty-one. By age thirty, Mary's condition had deteriorated to a point where she was in need of nursing care. In addition to being unable to take care of herself, Mary also suffered from a number of other medical ailments. One such ailment was bilateral hip flexion contractures in her knees and hips. In late 1986, Mary underwent surgery to release the hip contractures. The surgery was successful, but required therapy and special positioning to achieve maximum results.

On January 4, 1987, while Mary was in the care of Sinai Samaritan Medical Center, she unexpectedly suffered respiratory arrest. Mary was successfully resuscitated some time after the arrest. The effects of this arrest have yet to be considered by the trial court, and indeed, will likely be an issue of some dispute. Not in

dispute, however, is the fact that Charlotte was not informed of the arrest until approximately five hours after its occurrence. The reasons for the delay are unclear at this point in the proceedings.

On January 22, 1987, Mary was discharged from the medical center to the Sage Nursing Home, where she remained until her death on July 3, 1990. The cause of Mary's death was terminal multiple sclerosis. At the time of her death, Mary was not married and had no children. Her only lineal heir was her mother, Charlotte.

Subsequently, Charlotte, both individually and as personal representative of the Estate of Mary Wells, initiated the present litigation. Germane to this appeal are Charlotte's personal claims of loss of society and companionship and negligent infliction of emotional distress. Pursuant to defendant's summary judgment motion, the trial court dismissed both of Charlotte's compensatory claims, as well as her claim for punitive damages, by written order of October 25, 1991. Charlotte now appeals.

## II. STANDARD OF REVIEW

"In reviewing a summary judgment we follow the same methodology as the trial court." *Kane v. Employer's Ins. of Wausau*, 142 Wis. 2d 702, 703, 419 N.W.2d 324, 325 (Ct. App. 1987). Pursuant to sec. 802.08(2), Stats., summary judgment:

> shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

508

This court must make two determinations when ruling on a motion for summary judgment. First, we consider whether there is a dispute as to a material fact. *Delmore v. American Family Mutual Ins. Co.*, 118 Wis. 2d 510, 512, 348 N.W.2d 151, 152 (1984). Second, we look to see whether, under the law, the movant is entitled to a judgment. *Id.* at 512-13, 348 N.W.2d at 153. If there is no factual dispute on any material matter, then only a question of law is presented. *Id.* at 512, 348 N.W.2d at 153. "Questions of law are properly decided by summary judgment." *Kane*, 142 Wis. 2d at 705, 419 N.W.2d at 326. This court "will reverse a summary judgment only if the trial court incorrectly decided the legal issue." *Johansen v. Reinemann*, 120 Wis. 2d 100, 101, 352 N.W.2d 677, 678 (Ct. App. 1984).

## III. LOSS OF SOCIETY AND COMPANIONSHIP

Charlotte first contends that the trial court erred by granting summary judgment dismissal of her claim for the loss of society and companionship of her adult child. In particular, she argues that the current state of the law in Wisconsin allows a parent to recover for the loss of society and companionship of an injured adult child.[1] We disagree.

---

[1] Charlotte attempts to convince this court that we should be guided in our analysis by the language of the Wrongful Death Statute, sec. 895.04(2), Stats. This is not, however, a wrongful death claim. On the contrary, Mary lived for some three years after the alleged medical malpractice that forms the basis of this lawsuit. We are thus constrained by chapter 655 of the Wisconsin Statutes and the case law thereunder. As noted by the supreme court, "Chapter 655 controls all claims 'for injury or death on

The cases pertinent to the inquiry at hand include: *Shockley v. Prier,* 66 Wis. 2d 394, 225 N.W.2d 495 (1975); *Theama v. The City of Kenosha,* 117 Wis. 2d 508, 344 N.W.2d 513 (1984); and *Rineck v. Johnson,* 155 Wis. 2d 659, 456 N.W.2d 336 (1990). Each of these cases involved *minor children* and the recovery of damages for loss of society and companionship.

In *Shockley,* the supreme court considered the issue of whether a parent could recover damages for the loss of society and companionship of a minor child who had been injured by the negligent acts of another in the context of a medical malpractice action. Allegedly, the newborn infant of Mr. and Mrs. Shockley was negligently injured due to the infant's having been given excessive amounts of oxygen. The parents brought suit alleging that they were "deprived of [their] minor son's aid, comfort, society and companionship, and will in the future continue to be deprived of the same, to which [they were] entitled." *Shockley,* 66 Wis. 2d at 395-96, 225 N.W.2d at 497. Of significance in the *Shockley* case is its limiting language: "We therefore confine this opinion to the question of whether such damages are allowable to a parent during the minority of an injured child." *Id.* at 396, 225 N.W.2d at 497. With this qualification in mind, the court concluded that "a parent may maintain an action for loss of aid, comfort, society and companionship of an injured *minor* child against a negligent tortfeasor provided, and on condition, that the parent's cause of action is combined with that of the child for the child's personal injuries." *Id.* at 404, 225 N.W.2d at 501 (emphasis added).

*Theama* was a negligence action that addressed the issue of whether a minor child may recover for the loss of

account of medical malpractice . . . .' " *Rineck v. Johnson,* 155 Wis. 2d 659, 671, 456 N.W.2d 336, 342 (1990).

society and companionship caused by negligent injury to the parent. *Theama*, 117 Wis. 2d at 511, 344 N.W.2d at 514. Robert Theama was injured while driving on a road maintained by the city of Kenosha. His injury resulted in permanent brain damage as well as a litany of other serious injuries. *Id.* at 509, 344 N.W.2d at 513. Theama subsequently brought suit against the city of Kenosha, alleging in part that his children were deprived of the care, society, companionship, protection, training, and guidance of their father because of the city's negligence.

The supreme court concluded that where a child can establish negligence on the part of the defendant which resulted in injury to the parent, "the child may bring a cause of action for the loss of a parent's society and companionship resulting from another's negligence." *Id.* at 527, 344 N.W.2d at 522. The court, however, noted in closing that it was limiting the "recovery under this cause of action to the child's minority, because the minor is one whose relationship is most likely to be severely affected by a negligent injury to the parent." *Id.*

Finally, in *Rineck*, one of the issues examined by the supreme court was whether a minor child has a separate cause of action for loss of society and companionship when medical malpractice causes the death of one parent and the decedent is survived by his or her spouse. The *Rineck* case concerned negligence on the part of a nurse anesthetist who failed to properly supply Mrs. Rineck with an adequate supply of oxygen during an emergency cesarean section. Mrs. Rineck subsequently died but her child survived, albeit in a profoundly retarded condition. At trial, the child's claim for the loss of her mother's society and companionship was precluded. *Rineck*, 155 Wis. 2d at 663, 456 N.W.2d at 338.

On appeal, the supreme court reversed. Utilizing the reasoning of both *Shockley* and *Theama*, the court con-

cluded that a minor child may recover damages for loss of society and companionship where medical malpractice causes death. *Rineck*, 155 Wis. 2d at 669-72, 456 N.W.2d at 341-42. Once again, however, the court limited its recovery to minor children: "We further conclude consistent with *Theama*, that recovery under this cause of action is limited to the child's minority, since the minor is the one whose relationship is most likely to be severely affected by negligent injury or death to the parent." *Id.* at 671-72, 456 N.W.2d at 342.

The pattern of the aforementioned cases is clear. The supreme court now allows various claims for loss of society and companionship where the individual claiming recovery is alleging that either the victim or the one being affected by the injury is a *minor* child. As the intermediate appellate court, it is not within our power to alter and expand upon that which the supreme court has previously decided. Rather, our function is to see that there was no error in the application of the law by the trial court. *Davis v. Grover*, 159 Wis. 2d 150, 167, 464 N.W.2d 220, 227 (Ct. App. 1990), *rev'd on other grounds*, 166 Wis. 2d 501, 480 N.W.2d 460 (1992). Here, we conclude that the trial court acted properly when it granted summary judgment in favor of the defendants, thus precluding Charlotte's claim for the loss of society and companionship for her adult child. This is not to say that we do not recognize the love and enjoyment that Charlotte derived from Mary, however, this is a question more appropriately addressed to the legislature or the supreme court.

## IV. NEGLIGENT INFLICTION OF EMO-TIONAL DISTRESS

Charlotte's second argument on appeal is that the trial court erred in granting summary judgment precluding her negligent infliction of emotional distress claim. In particular, Charlotte argues that the trial court incorrectly interpreted the present requirements of Wisconsin law as it relates to recovery for negligent infliction of emotional distress.

Wisconsin law has long recognized a cause of action for the negligent infliction of emotional distress. *See, e.g., Waube v. Warrington*, 216 Wis. 603, 258 N.W. 497 (1935) (recognizing that Wisconsin allows a cause of action for negligent infliction of emotional distress). There are, however, certain requirements that must be met before a plaintiff can recover. These requirements can be summarized as follows: (1) the plaintiff must be within the range of ordinary physical peril; (2) the plaintiff must actually be in fear for his or her own safety; and (3) the plaintiff's emotional distress must be manifested by physical injury. *Garrett v. City of New Berlin*, 122 Wis. 2d 223, 230-31, 362 N.W.2d 137, 141-42 (1985).

In the present case, the trial court correctly stated that this case was governed by the requirements as delineated in *Garrett*. The court then proceeded, albeit succinctly, to assess the facts under the *Garrett* requirements. The court explained that "I believe this matter should be resolved in favor of the defense since the mother was neither at the hospital receiving treatment or anywhere near the zone at the time of the daughter's death."

Our independent review of the undisputed facts in this case leads us to conclude that the trial court acted

appropriately in granting the defendants' summary judgment motion denying Charlotte's negligent infliction of emotional distress claim. There is no dispute that Charlotte was not within the range of ordinary physical peril when her daughter suffered the respiratory arrest. She was at home when the arrest occurred and did not arrive at the hospital until some hours had passed. Further, from our vantage point it is difficult to imagine that Charlotte was actually in fear for her own safety when the respiratory arrest occurred. She was neither directly involved, nor a bystander witnessing the events as they unfolded. The third requirement—that the plaintiff's distress be manifested by physical injury—is not sufficiently addressed for our review. However, because we conclude, as did the trial court, that the first two requirements were not met, a review of the final requirement is unnecessary.

While we believe that Charlotte has indeed suffered great distress at the loss of her daughter, not every injury is redressable. "Some injuries are so indirectly related to the conduct of a person that notwithstanding the fact that emotional distress is suffered, no recovery is permitted." *O'Brien v. Medtronic, Inc.*, 149 Wis. 2d 615, 621, 439 N.W.2d 151, 153 (Ct. App. 1989). Further, as noted by the supreme court: "The distress that is usually experienced by close relatives when illness strikes a family member is normal and is not compensable." *Meracle v. Children's Serv. Soc'y*, 149 Wis. 2d 19, 30, 437 N.W.2d 532, 536 (1989).

## V. PUNITIVE DAMAGES

Charlotte also argues, although briefly, that her punitive damage claim should be reinstated. Charlotte does not, however, present any case law in support of her

assertion. Because we conclude that Charlotte's underlying compensatory damages claims are not maintainable, we also conclude that her punitive damages claim is precluded.

"A general and perhaps almost universally accepted rule is that punitive damages cannot be awarded in the absence of actual damage." *Tucker v Marcus*, 142 Wis. 2d 425, 438-39, 418 N.W.2d 818, 823 (1988). Further, as noted by this court, "[b]ecause compensatory damages cannot be given in this action, neither can punitive damages." *Bachand v. Connecticut General Life Ins. Co.*, 101 Wis. 2d 617, 633, 305 N.W.2d 149, 156 (Ct. App. 1981). In the present case, the trial court correctly concluded that Charlotte's punitive damages claims should be precluded.

*By the Court.*—Order affirmed.

SCHUDSON, J. (*concurring in part; dissenting in part*). I concur with the majority's holdings regarding the negligent infliction of emotional distress and punitive damages claims. I write separately, however, because I believe the issue of whether a parent can bring a cause of action for loss of society and companionship resulting from negligent injury of an adult child should be certified to our supreme court.

The authorities upon which the majority relies do not necessarily command the conclusion that a parent cannot bring a cause of action for loss of society and companionship resulting from negligent injury of an adult child. *Schockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (1975), allowed a parent to bring a cause of action for loss of society and companionship resulting from injuries to a minor child in a medical malpractice action. *Theama v. City of Kenosha*, 117 Wis. 2d 508, 344 N.W.2d 513 (1984), allowed a minor child to bring a

cause of action for loss of society and companionship resulting from injuries to a parent involved in a negligence action. Likewise, *Rineck v. Johnson*, 155 Wis. 2d 659, 456 N.W.2d 336 (1990), allowed a minor child to bring a cause of action for loss of society and companionship resulting from the death of a parent in a medical malpractice action. None of these cases addressed the issue before us in this case. All, however, expanded the potential for recovery resulting from loss of society and companionship within the parent-child relationship.

Therefore, when the majority states that "[t]he pattern of the aforementioned cases is clear[,]" majority op. at 512, one could reasonably conclude that the pattern extends to a parent in Ms. Jeske's circumstances. Nothing in these three cases precludes that possibility.

Ms. Jeske presents a new question that, like those answered in *Schockley*, *Theama* and *Rineck*, will advance the development of common law. It is a question never answered by our supreme court, and one that will require policy determinations beyond the error-correcting function of this court. Accordingly, because I conclude that this issue should be certified to our supreme court, I respectfully dissent.