The ESTATE OF Mary WELLS, by her personal representative/administratrix, Charlotte Jeske, Plaintiff,

Charlotte JESKE, Plaintiff-Appellant-Petitioner,

v.

MOUNT SINAI MEDICAL CENTER, n/k/a Sinai Samaritan Medical Center and/or Aurora Health Care, Mount Sinai Campus, Daniel Wartinbee, M.D., Milwaukee Orthopaedic Group, Ltd., Wisconsin Health Care Liability Insurance Plan, The Professional Insurance Company of Ohio and Wisconsin Patients' Compensation Fund, Defendants-Respondents,

E.J. HUXLEY, M.D., Pulmonary Medicine Associates of Milwaukee, The Medical Protective Company and Milwaukee County Department of Health & Human Services, Defendants.

Supreme Court

*No. 92–0186. Oral argument January 7, 1994.—Decided May 25, 1994.*

(Also reported in 515 N.W.2d 705.)

667

For the plaintiff-appellant-petitioner there briefs by *William W. Ehrke* and *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.,* Milwaukee and oral argument by *William W. Ehrke.*

For the defendants-respondents there were briefs by *Mary Lee Ratzel, Jan M. Schroeder* and *Peterson, Johnson & Murray, S.C., James M. Fergal, Linda Vogt Meagher* and *Schellinger & Doyle, S.C., Wayne Van Ert, Peter D. Alberg* and *Otjen, Van Ert, Stangle, Lieb and Weir, S.C.* Milwaukee and oral argument by *Mary K. Wolverton, James M. Fergal* and *Peter D. Alberg.*

JON P. WILCOX, J.  The issue on review is whether a parent can recover for loss of the society and companionship of an adult child whose injuries allegedly resulted from medical malpractice. The court of appeals, believing that a parent's cause of action for lost society and companionship was limited to minor children, upheld the trial court's order granting defendants' motion for summary judgment.[1] We affirm.

These are the facts. Mary Wells (Wells) was diagnosed as having multiple sclerosis when she was 21 years old. By age 30, her disease steadily progressing, Wells was admitted to the Sage Nursing Home.

In December of 1986, when she was 34 years old, Wells underwent surgery to release hip contractures. During the course of a post-surgical treatment session at Mount Sinai Medical Center on January 4, 1987, she unexpectedly suffered respiratory arrest. The causes of this arrest, as well as the degree to which the arrest affected her condition, remain in dispute. Petitioner, however, alleges that the arrest resulted from the defendants' negligent medical care, and that it left Wells in a "virtual vegetative" state.

Upon her release from Mount Sinai, Wells returned to the Sage Nursing Home where she continued to reside until her death from terminal multiple sclerosis at the age of 38. Although she had been married twice, Wells was single at the time of her death. She left no children, and her sole surviving lineal heir is her mother, the petitioner.

This appeal deals exclusively with petitioner's suit to recover for the loss of her daughter's society and companionship for the period running from the day

---

[1] *Estate of Mary Wells v. Mount Sinai Medical Center et al.,* 174 Wis. 2d 503, 497 N.W.2d 779 (1993).

Wells suffered her arrest through to the date of her death approximately three and one-half years later.[2] Petitioner alleges that this loss was due to the injuries Wells allegedly suffered as the result of defendants' negligence.

The trial court granted defendants' motion for partial summary judgment. The court of appeals affirmed, holding that our earlier cases in this area, particularly *Shockley v. Prier,* 66 Wis. 2d 394, 225 N.W.2d 495 (1975), *Theama v. City of Kenosha,* 117 Wis. 2d 508, 344 N.W.2d 513 (1984), and *Rineck v. Johnson,* 155 Wis. 2d 659, 456 N.W.2d 336 (1990), clearly limited a parent's cause of action for loss of society and companionship to their minor children. *Estate of Mary Wells,* 174 Wis. 2d at 512.[3]

██

Our task in this case is to determine whether the trial court properly granted the defendants' motion for

---

[2] Petitioner brought several other suits as well. First, in her capacity as personal representative of Wells's estate, she seeks recovery for the pain, suffering and other damages allegedly inflicted upon Wells by the defendants' negligence. That suit has been stayed pending the outcome of this appeal.

Individually, petitioner sued for negligent infliction of emotional distress stemming from her discovery of Wells's respiratory arrest at Mount Sinai Medical Center. The court of appeals affirmed the trial court's dismissal of that claim, and petitioner has not appealed that aspect of the court of appeals' decision.

[3] Judge Schudson dissented from that part of the majority opinion which upheld the dismissal of petitioner's claim for loss of society and companionship. Judge Schudson did not believe that the cases relied upon by the majority resolved the question of whether a parent could recover for the loss of an adult child's society and companionship. *Estate of Mary Wells,* 174 Wis. 2d at 515–16 (Schudson, J., concurring in part, dissenting in part).

summary judgment. In reviewing such matters, we follow the same methodology as the trial court. That methodology is articulated in sec. 802.08(2), Stats.:

> [Summary judgment] shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This analysis requires us to make two determinations. First, we consider whether there is a dispute as to a material fact. If no material facts are in dispute, we then determine whether under the law, the movant is entitled to summary judgment. *Delmore v. American Family Mutual Insurance Company,* 118 Wis. 2d 510, 512–13, 348 N.W.2d 151 (1984). For purposes of this appeal, the material facts are undisputed: Wells was a single, childless adult at the time of her death, and the petitioner was her mother and sole surviving heir. As a result, we proceed to the question of law herein posed. That question is whether under these facts, the petitioner can recover for the loss of her daughter's society and companionship.

The common law traditionally did not recognize such a cause of action. Rather, as this court indicated nearly 70 years ago in *Callies v. Reliance Laundry Co.,* 188 Wis. 376, 380, 206 N.W.2d 198 (1925), a parent's recovery in such cases was limited to compensation for 1) loss of the child's earning capacity during minority, and 2) the child's reasonable medical and nursing expenses during minority.

As we have since observed, the *Callies* decision embodied the economic and social realities of its day. Specifically, it reflected a society dependent on child labor, where a child's contribution to the family was more apt to be viewed in economic rather than sentimental terms, and where courts routinely analogized the parent/child relationship to that of master/servant.

With this court's decision in *Shockley,* however, Wisconsin became one of the first states to allow parents to recover damages for the loss of their negligently-injured minor child's society and companionship. *Id.* at 401. Attributing the common law's "genius" to its ability to adapt to society's changing needs, we made the following observation:

> Since our court last laid down the law in *[Callies],* the family relationship has changed. Society and companionship between parents and their children are closer to our present-day family ideal than the right of parents to the 'earning capacity during minority' which once seemed so important when the common law was originally established.

*Id.* at 400–01.

The significance of *Shockley* lies in its recognition of the emotional aspects of the parent/child relationship. The question before us today, however, is one *Shockley* left unanswered. That question is whether the cause of action created therein extends to the parents of negligently-injured *adult* children as well as *minor* children.[4]

---

[4] In *Shockley,* we prefaced our analysis with the following:

In his argument, counsel emphasized that it is only for the period of minority that the plaintiffs are seeking damages in this action. We therefore confine this opinion to the question of whether such dam-

673

The answer is not found in the statutes. Because petitioner alleges that Wells's injuries resulted from medical malpractice, her loss of society and companionship claim is governed by Chapter 655.[5] Unfortunately, Chapter 655 is silent with respect to who can maintain such a claim, and under what conditions.

Nor is Wisconsin's wrongful death statute applicable.[6] As indicated, claims arising from medical malpractice are governed by Chapter 655, not the wrongful death statute. At an even more basic level, the wrongful death statute, as its name indicates, applies only when the alleged loss results from a wrongful death. Here, the lost society and companionship for which the petitioner seeks recovery allegedly stems from the *injuries* Wells suffered, not from her *death*.

This lack of statutory guidance does not, however, prevent this court from acting. As we explained in *Shockley,* the rules against recovery for loss of society and companionship were created by the courts, and it is our responsibility, as much as it is the legislature's, to continue to shape this area of the law. *Id.* at 397.

Moreover, determining whether or not to extend the scope of liability with respect to a particular field of negligence claims is not a new task for this court. In the past, we have articulated a number of public policy considerations which may serve to deny the imposition

---

ages are allowable to a parent during the minority of an injured child. *Id.* at 396.

[5] Chapter 655 sets tort claims produced by medical malpractice apart from other tort claims, and parties are conclusively presumed to be bound by the provisions of the chapter regardless of injury or death. *Rineck v. Johnson,* 155 Wis. 2d 659, 665, 456 N.W.2d 336 (1990).

[6] Section 895.04, Stats.

of liability, even where negligence otherwise exists. As we noted in *Hass v. Chicago & North Western Railway Company,* 48 Wis. 2d 321, 179 N.W.2d 885 (1970):

> It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too 'wholly out of proportion to the culpability of the negligent tortfeasor,' or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden [on negligent tortfeasors], or be too likely to open the way for fraudulent claims, or would 'enter a field that has no sensible or just stopping point.'

*Id.* at 326, (quoting *Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957).[7]

Of these public policy considerations, those concerned with the imposition of excessive liability are particularly germane to claims for lost society and companionship. That is because the plaintiff's recovery in such cases is predicated upon the emotional ties he or she shares with the injured party. Consequently, the possible universe of claimants is limited only by the number of persons with whom the injured person has established personal relationships. Moreover, the negligent tortfeasor in such cases faces the considerable burden of disproving the existence and/or significance of any such relationships. As a result, courts generally

---

[7] *See also, Wilson v. Continental Insurance Cos.,* 87 Wis. 2d 310, 274 N.W.2d 679 (1979); *Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis. 2d 515, 217 N.W.2d 383 (1974); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976); *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 219 N.W.2d 242 (1974).

recognize that this particular cause of action necessitates some degree of judicial guidance.[8]

Our post-*Shockley* decisions in this area indicate this court's sensitivity to these very valid public policy concerns. In *Theama*, for instance, the issue was whether or not to allow a minor child to recover damages for the lost society and companionship of a negligently-injured parent. *Theama*, 117 Wis. 2d at 509. Finding that the child's loss in such cases was at least as devastating and deserving of protection as that of the parents in *Shockley*, we allowed recovery. *Theama*, 117 Wis. 2d at 514.

In *Theama*, however, we advanced beyond the particular facts of that case to announce a rule of general application. Specifically, we limited recovery for the loss of an injured parent's society and companionship to the period of a child's minority. *Id.* at 524. We did so in part to address concerns that allowing the child's cause of action in *Theama* would expose negligent

---

[8] For example, in *Norman v. Massachusetts Bay Transportation Authority*, 529 N.E.2d 139 (Mass. 1988), the court relied on public policy grounds to reject parents' recovery for the lost society and companionship of their injured adult child:

> Our repeated commitment to use discerning caution was prompted by an awareness that, as a matter of sound public policy, the law cannot and should not attempt to right all wrongs. "As a matter of public policy, it must be recognized that tort liability cannot be extended without limit." *Id.* at 140 (quoting *Feliciano v. Rosemar Silver Co.*, 514 N.E.2d 1095 (1987)).

*See, also, Sizemore v. Smock*, 422 N.W.2d 666, 672 (Mich. 1988), where the court dismissed parent's claim for loss of her negligently-injured minor child's society and companionship in part because, "The social consequences and economic burdens resulting to the public from recognition of an additional cause of action also persuade us that the line of liability should not be extended any further." *Id.* at 672.

tortfeasors to an ever-expanding degree of liability. While implicitly acknowledging the legitimacy of such concerns in general, we explained that limiting recovery to minor children effectively minimized such fears:

> This court has absolutely no difficulty in limiting such a cause of action to the two relationships likely to be most severely affected by a negligent injury to a parent, namely, the husband-wife relationship, and that of the parent and minor child.

*Id.*

Thus, in *Theama,* this court refused to extend recovery for the lost society and companionship of an injured parent beyond the confines of the "nuclear family," a term we defined in that context to encompass parents and their minor children. *Id.* at 524.

More recently, in *Rineck,* we allowed a minor child to recover for the loss of the society and companionship of a parent whose death resulted from medical malpractice. *Rineck,* 155 Wis. 2d at 671. Citing *Theama,* however, we again specifically limited the cause of action to minor children. *Id.* at 671–72.

While neither *Shockley, Theama* nor *Rineck* considered the precise issue before us today, those decisions all reveal this court's hesitancy when expanding the loss of society and companionship cause of action. Together, those three cases form a partial framework which limit the scope of recovery. Today, we complete that framework by declining to extend the parent's cause of action to their negligently-injured adult children.

We do so because sound public policy dictates that some limit be placed on the liability faced by negligent tortfeasors. As the law currently stands, a negligent tortfeasor may be liable not only to the victim herself

for injuries sustained,[9] but also to the victim's spouse[10] and minor children[11] for loss of society and companionship. The tortfeasor may in some instances also be liable to third parties for the negligent infliction of emotional distress.[12] To hold that same tortfeasor potentially liable to the parents (both parents, when applicable, could presumably bring separate claims) for the loss of an adult victim's society and companionship, is, we believe, excessive and contrary to public policy.

There are several reasons why allowing recovery to the parents of minor children but not adult children is a rational response to the above-articulated public policy concerns. As compared to adult children, minors are significantly less likely to have spouses or children of their own. Thus, in most cases, a tortfeasor who injures a minor child will not also be liable to persons having such relationships to the victim.

In addition, the period of minority itself is limited, lasting just 18 years. Today, with increasing life expectancy, it is not uncommon that persons 60 or even 70 years of age may still have surviving parents. Extending the parents' cause of action to their adult children, therefore, will in many cases extend the parents' potential period of recovery by as much as 40 or 50 years.

---

[9] As noted above, petitioner, in her role as personal representative, has initiated such an action on behalf of Wells's estate.

[10] *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 558, 150 N.W.2d 137 (1967).

[11] *See,* discussion of *Theama, supra.*

[12] *Bowen v. Lumbermens Mutual Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994).

Our decision not to allow parents to recover for the lost society and companionship of an injured adult child is consistent with the vast majority of other jurisdictions. The parties, as well as our own research, have identified just three jurisdictions which recognize a parent's ability to recover for an injured *adult* child.[13] The majority of states, in fact, have not even gone so far as to allow recovery to the parents of minor children, as this court did in *Shockley.*[14]

Petitioner suggests that we draw upon the provisions of the Wisconsin wrongful death statute to support her claim. She argues that after *Shockley,* that statute was amended to allow parents to recover for the lost society and companionship of their adult children, thereby evincing a legislative intent to allow parents like herself to recover. Assuming, without holding, that the statute allows such recovery, petitioner's reliance

---

[13] *Howard Frank, M.D., P.C., v. Superior Court,* 722 P.2d 955 (Ariz. 1986), *Masaki v. General Motors Corporation,* 780 P.2d 566 (Haw. 1989), *Harbeson v. Parke-Davis, Inc.,* 656 P.2d 483 (Wash. 1983).

[14] *See, Michaels v. Nemethvargo,* 571 A.2d 850, 855 Md. App. 1990), where the court noted that:

> *Shockley,* admittedly, has not had as significant an impact on the legal terrain of parental loss of a child's companionship as might have been expected. The majority of cases confronting this issue have not expanded the common law action for services to allow recovery for society.

*See, also,* Mark L. Johnson, *Compensating Parents For The Loss Of Their Nonfatally Injured Child's Society: Extending The Notion Of Consortium To The Filial Relationship,* 1989 U. Ill. L. Rev. 761, 764 (although noting a trend towards allowing recovery, the author concludes that "the overwhelming majority of courts refuse to recognize the parents' cause of action for loss of consortium").

is nonetheless misplaced. A careful reading of the wrongful death statute reveals the legislature's acute awareness of the problems inherent in claims for loss of society and companionship. For instance, unlike other causes of action, the statute explicitly limits recovery for lost society and companionship to the deceased's surviving spouse, children or parents. Section 895.04(4), Stats. Moreover, these parties can not all recover in any given case because the statute establishes a hierarchy among the claimants. Section 895.04(2). Thus, if the deceased leaves a surviving spouse or children, parents cannot recover for lost society and companionship. Finally, the statute limits damages for lost society and companionship to $150,000. Section 895.04(4). Other damages arising from a wrongful death are not limited in any manner. For these reasons, it is impossible to analogize petitioner's common law cause of action to the recoveries provided under the wrongful death statute. Short of this court adopting wholly the constraints embedded in that statute, including a maximum recovery limit, the threat of excessive liability would still remain.

Neither the wrongful death statute nor the common law cause of action for lost society and companionship are attempts to provide recovery in all cases. Rather, given the serious policy concerns in this area, they are better viewed as honest and rational attempts to provide recovery in those circumstances which society generally acknowledges as particularly significant.

Limiting recovery for reasons of public policy always runs the risk of working harsh results in individual cases.[15] For instance, people may question the

---

[15] In *Rineck,* this court held that the surviving husband was not entitled to compensation for the loss of his deceased wife's

680

logic which denies recovery to the parent of an 18 year old, but allows recovery for the parent of a 17 year old. Similarly, under the wrongful death statute, a parent whose child was married cannot recover for lost society and companionship, while the parent of a divorced child possibly can. In such line-drawing an indication by the legislature or this court that the parental relationships in the first instances are less significant than in the second? Of course not. But given the compelling public policy concerns in this area, a line at which liability ends must be drawn. We believe that the age of majority represents a rational place to draw that line. It is consistent with the vast majority of the other states, it is consistent with *Theama* and *Rineck,* and it is consistent with the equitable goal of allowing recovery in the most compelling cases without subjecting either the tortfeasor, or society in general, to an expanding and perhaps intolerable degree of liability.

*By the Court.*—Decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I agree with the majority that we must examine public policy considerations to determine whether liability will be imposed, even where negligence otherwise might exist (Majority Opinion at 674). Fairness to the defendant requires that we avoid imposing unreasonable liability. However, unlike the majority, I believe that our allowance of recovery only for the negligent

---

child care services for the period beyond his child's eighteenth birthday. Recognizing that limiting recovery strictly to the period of minority would in certain cases "seem harsh," we nonetheless felt that such a rule provided "parity" with the rationale of *Theama. Id.* at 673.

injury of a member of the nuclear family sufficiently limits liability for loss of society and companionship. I would not impose an inflexible age limitation. The extent of any claimed loss of society and companionship between a parent and an adult child is, I conclude, a matter of proof to be determined by the factfinder. For these reasons, I write separately.