Charles JOHNSON and Karen Johnson, Plaintiffs-Appellants,†

v.

ROGERS MEMORIAL HOSPITAL, INC., Heartland Counseling Services, Defendants-Respondents,

SOUTH STREET CLINIC, Defendant,

Kay PHILLIPS, Ph.D., Jeff Hollowell and Tim Reisenauer, Defendants-Respondents,

ABC INSURANCE COMPANY, DEF Insurance Company, GHI Insurance Company, JKL Insurance Company, MNO Insurance Company, and PQR Insurance Company, Defendants,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Respondent.

Court of Appeals

*No. 98–0445. Submitted on briefs December 6, 1999.—Decided July 13, 2000.*

2000 WI App 166

(Also reported in 616 N.W.2d 903.)

†Petition to review granted.

228

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William Smoler* and *Gregory P. Seibold* of *Murphy & Desmond, S.C.* of Madison.

On behalf of the defendant-respondent, Rogers Memorial Hospital, Inc., the cause was submitted on the brief of *Lori Gendelman* and *Jeffrey J.P. Conta* of *Otjen, Van Ert, Lieb & Weir, S.C.* of Milwaukee.

On behalf of the defendant-respondent, Kay Phillips, Ph.D., the cause was submitted on the brief of *David E. McFarlane* and *Kendall Harrison* of *La Follette Sinykin, LLP* of Madison.

On behalf of the defendants-respondents, Jeff Hollowell and Tim Reisenauer, the cause was submitted on the brief of *Bradway A. Liddle, Jr.* and *Mario D. Mendoza* of *Boardman, Suhr, Curry & Field LLP* of Madison.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Charles and Karen Johnson (the Johnsons) brought suit for personal injuries they contend they suffered due to false allegations by their daughter, Charlotte, that when she was a child, Charles had sexually abused her and Karen had physically abused her. The Johnsons contend they have a third-party claim for medical malpractice due to the negligent infliction of emotional harm to them, under the holding of *Sawyer v. Midelfort*, 227 Wis. 2d 124, 595 N.W.2d 423 (1999). However, because Charlotte has neither joined in the lawsuit nor waived her right to the confidentiality to her medical records and psychologist-patient communications which are central to the Johnsons' third-party claims, we conclude those professional negligence claims are barred on public policy grounds. We also conclude that the Johnsons' breach of contract claim against Rogers Memorial Hospital is barred by the same public policy. Therefore, we affirm the circuit court's judgment of dismissal.

## BACKGROUND

¶ 2. The Johnsons are the parents of an adult daughter, Charlotte, who received psychotherapy from psychologists Kay Phillips, Jeff Hollowell and Tim

Reisenauer.[1] The majority of Charlotte's psychotherapy was done as an outpatient, some through Heartland Counseling Services, where Phillips was employed, and some through the South Street Clinic,[2] which billed for Hollowell and Reisenauer. However, in November of 1991, Charlotte received inpatient therapy from Hollowell and Reisenauer at Rogers Memorial Hospital. The Johnsons contracted with Rogers Memorial to pay for Charlotte's inpatient care.

¶ 3. While an inpatient at Rogers Memorial, Charlotte confronted Charles with the allegation that he had sexually abused her as a child. And at a later meeting with the therapists, Charlotte accused her mother of physically abusing her and of "supporting" Charles's sexual abuse.

¶ 4. The Johnsons deny both the sexual and the physical abuse and have brought third-party medical malpractice claims against Phillips, Hollowell, Reisenauer and Rogers Memorial for falsely implanting the memory of such untrue abuse during the therapists' treatment of Charlotte. The Johnsons claim that Charlotte's allegations resulted from her negligent treatment and that that negligent treatment resulted in a direct injury to them of past and future emotional harm. They also make a claim against Rogers Memorial for the negligence of their agents, Hollowell and Reisenauer, and for breach of contract

---

[1] This case reaches us on a motion to dismiss where all allegations in the pleadings and the reasonable inferences therefrom are taken as true for purposes of this appeal. *See Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 143, 549 N.W.2d 714, 715–16 (1996).

[2] The South Street Clinic was dismissed prior to the circuit court's decision on the motion to dismiss, which is the subject of this appeal.

for failing to provide "appropriate treatment" to Charlotte.

¶ 5. All defendants answered the complaint, denied the material allegations, raised various affirmative defenses and moved to dismiss for failure to state a claim and on various other grounds. The circuit court granted their motions to dismiss, and the Johnsons appeal.

## DISCUSSION

**Standard of Review.**

¶ 6. Whether a third-party's professional negligence claim against a therapist to recover damages for the negligent infliction of emotional harm due to a patient's allegedly false memories of abuse resulting from psychotherapy states a claim for relief in Wisconsin is a question of law. *See Sawyer*, 227 Wis. 2d at 137, 595 N.W.2d at 430 (citing *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 259, 580 N.W.2d 233, 237 (1998)). Whether such a claim, well-pled, is nevertheless precluded on public policy grounds is also a question of law. *See Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 142, 549 N.W.2d 714, 715 (1996). We review questions of law *de novo*. *See State v. Walters*, 224 Wis. 2d 897, 901, 591 N.W.2d 874, 875–76 (Ct. App. 1999).

**Third-Party Professional Negligence Claims.**

¶ 7. The core of the Johnsons' claim is that the therapists caused Charlotte to believe that she was remembering events that never happened. Therefore, they contend that her accusations were unwarranted

and arose from negligently provided psychotherapy, rather than from actual occurrences. This alleged negligence by the therapists caused the Johnsons to suffer emotional harm.[3]

¶ 8. While this case was pending, the supreme court decided *Sawyer*, in which it determined that public policy did not preclude a third-party from maintaining a medical malpractice action for the negligent infliction of emotional harm when there was a direct injury to a third-party. The Sawyers' claim was also bottomed on an accusation of sexual and physical abuse, which they contended they did not perpetrate and which they also asserted was the result of a false memory negligently implanted by the therapist. However, the Sawyers, as the administrators of their deceased daughter's estate, also brought a claim on behalf of the estate, thereby putting their daughter's medical condition at issue under WIS. STAT. §§ 804.10 and 905.04(4)(c) (1997–98).[4] Furthermore, as administrators of their daughter's estate, they had custody of her medical records.

¶ 9. However, while the supreme court permitted a third-party claim for medical malpractice when a third-party has suffered a direct injury, it left open the

---

[3] The pleadings state broader claims for the injuries on behalf of the Johnsons, such as the loss of their relationship with Charlotte. However, those claims were not pursued during this appeal, nor could they be maintained. *See Estate of Wells v. Mount Sinai Med. Ctr.*, 183 Wis. 2d 667, 677–78, 515 N.W.2d 705, 709 (1994) (concluding there is no claim on behalf of a parent for the loss of society and companionship of an adult child).

[4] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

question of whether public policy would bar a third-party's claim for the negligent infliction of emotional harm when the patient's right to maintain the privacy of her confidential communications with her therapists had not been waived and the patient's health care records remained protected under the statutes. It opined that: "Perhaps problems of confidentiality [where the patient has not relinquished that privilege] would preclude liability from being imposed in a future case . . . ." *Sawyer*, 227 Wis. 2d at 150, 595 N.W.2d at 436.

¶ 10. Additionally, in *Sawyer*, both the concurrence, by Justice Wilcox, and the dissent, by Justice Bradley, were concerned about the court's concluding a third-party claim for medical malpractice was available in Wisconsin, when the patient had not consented to the release of her/his medical records or relinquished the confidentiality of the psychologist-patient privilege.

> The majority also dismisses the doctors' concerns about confidentiality between a therapist and patient due to [the patient's] death. However, in the next case, the defendant(s) may be presented with a different situation, one in which the therapist cannot properly defend himself or herself without revealing confidences disclosed in sessions.
>
> [. . . .]
> By allowing third-party actions against therapists, patients may be faced with a difficult choice between preserving the confidentiality of patient-therapist communications or assisting the therapist in responding to the action.

*Id.* at 163–64, 595 N.W.2d at 442 (Wilcox, J., concurring).

¶ 11. Here, we are presented with the case excepted from the supreme court's opinion in *Sawyer*. Charlotte's medical records are not in the Johnsons' possession, and she has not waived her right to maintain their confidentiality. She also has not relinquished her privilege to retain the privacy of her communications with the therapists.

¶ 12. A trial of the Johnsons' claims would focus on the psychotherapy provided to Charlotte. A health care provider[5] is subject to liability for negligently provided care if " 'he fails to exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances.' " *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988) (quoting *Shier v. Freedman*, 58 Wis. 2d 269, 283–84, 206 N.W.2d 166, 174, *modified*, 58 Wis. 2d 269, 208 N.W.2d 328 (1973)). The history of a patient's health care is recorded by health care providers in the patient's health care records, which records are protected from disclosure by WIS. STAT. § 146.82(1),[6] except in limited circumstances not at issue here. Furthermore, all confidential communications between a patient and his or her health care provider are privileged and may not be disclosed without the patient's consent, except in lim-

---

[5] A psychologist is a health care provider. *See* WIS. STAT. § 146.81(1)(h).

[6] WIS. STAT. § 146.82(1) provides in relevant part:

**Confidentiality of patient health care records. (1)** CONFIDEN-TIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient.

ited circumstances not present in this case. *See id.*; WIS. STAT. § 905.04(2), (3) and (4)(c).

¶ 13. In order for the Johnsons to prove their claim, they will need to examine the treatment given Charlotte and confidential communications between her and the therapists. And, in defense, the therapists will wish to show that the treatment they provided was that expected of an average therapist, acting in the same or similar circumstances. Therefore, we must decide whether, without access to Charlotte's health care records and the freedom to relate confidential communications between her and the therapists, this lawsuit should be precluded on public policy grounds.

¶ 14. Appellate courts have examined various grounds to determine whether public policy should prevent a claim for liability from proceeding. They are:

> (1) the injury is too remote from the negligence; or
> (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or
> (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or
> (4) allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or
> (5) allowance of recovery would be too likely to open the way for fraudulent claims; or
> (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Sawyer*, 227 Wis. 2d at 142, 595 N.W.2d at 432 (citing *Garrett v. City of New Berlin*, 122 Wis. 2d 223, 233–34, 362 N.W.2d 137, 143 (1985)). In *Sawyer*, the supreme court reviewed the six factors set forth above and concluded that none prohibited a third-party claim for a

direct injury based on medical malpractice. However, the court also considered the "collateral burden" that the recognition of such a third-party claim may have on the therapist-patient relationship as an additional public policy basis relevant to whether the lawsuit should proceed. *See Sawyer*, 227 Wis. 2d at 147, 595 N.W.2d at 434. It defined its collateral burden concerns in terms of two additional public policy factors: (1) treatment modalities and (2) the confidentiality of the therapist-patient relationship.

¶ 15. In regard to treatment modalities, the supreme court examined whether third-party liability may cause therapists to refuse to treat patients who believed they may have been sexually abused or to refrain from using new and innovative forms of therapy which the therapist believed were best suited for the condition from which the patient suffered. *See id.* The supreme court reasoned that, under the facts found in *Sawyer*, treatment modalities were an insufficient public policy basis to preclude the lawsuit because the standard of care owed to a patient by a therapist is not increased by permitting a third-party cause of action, as the therapist continues to be obligated to provide care in the manner exercised by the average psychologist acting in the same or similar circumstances. *See id.* at 148, 595 N.W.2d at 435.

¶ 16. In the case at hand, we also see no increase in the collateral burden for the therapists in the provision of care sufficient to meet the necessary standard due to the third-party claim of the Johnsons. The availability or unavailability of Charlotte's medical records does not affect the type of therapy she has already received, nor should it affect the standard of care to which Charlotte was entitled when that care was rendered.

¶ 17. However, the lack of access to Charlotte's medical records and the confidentiality shield for her communications with the psychologist-defendants create a significant collateral burden in this case, which was not present in *Sawyer*.[7] For example, without the use of Charlotte's health care records and the confidential communications between her and the therapists, the therapists would be precluded from presenting facts relevant to whether the therapy they provided was such that it met the degree of care and skill which is exercised by the average psychologist acting in the same or similar circumstance. For example, those records could prove that the therapy provided was not the source of any "recollections" that later proved to be false.[8] And, on the other hand, they are also the records the Johnsons will need to review in order to prove that the allegedly false memories arose from the therapy. However, the public policy underlying the privilege, that of encouraging patients to freely and candidly discuss their health care concerns with their health care providers so they may be adequately treated, would be

---

[7] Contrary to the assertion in the dissent, the public policy concern we rely on is articulated in *Sawyer v. Midelfort*, 227 Wis. 2d 124, 595 N.W.2d 423 (1999). "Because the patient holds the privilege of confidentiality, the defendants in third-party actions may not be able to successfully defend themselves, for they will not be able to breach their duty of confidentiality to their patients." *See id.* at 150, 595 N.W.2d at 436.

[8] As has been reported, there could be other sources for false memories. For example, they could result from the type of mental illness affecting the patient or suggestions the patient took from numerous stories of sexual abuse contained in the popular press, in movies and in novels. *See* Cynthia Grant Bowman & Elizabeth Mertz, *A Dangerous Direction: Legal Intervention In Sexual Abuse Survivor Therapy*, 109 HARV. L. REV. 549 (1996).

thwarted if patients' health care records were fair game whenever any third-party initiated a lawsuit to which those records might be relevant. Additionally, the legislature has clearly mandated the protection of confidential psychologist-patient communications and of patient health care records in WIS. STAT. §§ 905.04 and 146.82(1).

¶ 18. We have been presented with no argument that causes us to conclude that the Johnsons' interest in financial compensation for the injury they claim to have suffered should trump Charlotte's right to maintain the confidentiality of her privileged communications and health care records. Therefore, under the circumstances set forth in the record before this court, those health care records and communications remain privileged and unavailable. Accordingly, we conclude that because Charlotte's medical records and her confidential communications with her therapists are necessary to the fair resolution of the Johnsons' third-party medical malpractice claims, the Johnsons are precluded from continuing those claims in order to further the public policy of protecting the confidentiality of the therapist-patient relationship.[9]

---

[9] The Johnsons included Rogers Memorial in their third-party medical malpractice claim under an agency theory. Our conclusion that their claims for a third-party injury from medical malpractice may not proceed applies with equal force to those medical malpractice claims against the hospital based on agency.

**Breach of Contract.**

¶ 19. The Johnsons also sued Rogers Memorial based on what they contend is a breach of contract to provide "appropriate treatment" to Charlotte. They assert that as a result of this alleged breach they suffered damages, "including, but not limited to, loss of the relationship with their daughter Charlotte Johnson, loss of payments made for inpatient care and other consequential and incidental damages including emotional pain and suffering and past and future loss of enjoyment of life . . . ." While this claim is styled as a breach of contract action, it is based on the failure to provide "appropriate treatment" to Charlotte. Read in the context of the complaint, it is simply an action for medical malpractice labeled as a contract claim, because the Johnsons will be required to prove that the care provided to Charlotte did not meet the requisite legal standard. *See Koschnik v. Smejkal*, 96 Wis. 2d 145, 291 N.W.2d 574 (1980). Once again, confidential communications between the therapists and Charlotte and Charlotte's health care records will be necessary to the prosecution and defense of the claim. Therefore, for all the reasons stated above, we conclude that this claim, too, may not proceed. Accordingly, we affirm the judgment of the circuit court dismissing the lawsuit.

## CONCLUSION

¶ 20. Because Charlotte has neither joined in the lawsuit nor waived her right to the confidentiality to her medical records and psychologist-patient communications, which are central to the Johnsons' third-party claims, we conclude those professional negligence claims are barred on public policy grounds. We

240

also conclude that the Johnsons' breach of contract claim against Rogers Memorial Hospital is barred by the same public policy. Therefore, we affirm the circuit court's judgment of dismissal.

*By the Court.*—Judgment affirmed.

¶ 21. DYKMAN, P.J. *(dissenting).* The majority has concluded that the Johnsons' complaint should be dismissed because the majority predicts that the Johnsons will not be able to prove their case. I do not read the majority opinion as relying on any of the six policy factors Wisconsin courts use to reverse a jury's finding of negligence, causation, and damages. *See Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.*, 231 Wis. 2d 404, 417–18, 605 N.W.2d 620 (Ct. App. 1999). It seems, therefore, that the majority has invented a seventh policy factor: "the plaintiff will be unable to prove a negligence case." To me, that goes far beyond the error-correcting function of this court. *See Deegan v. Jefferson County*, 188 Wis. 2d 544, 559, 525 N.W.2d 149 (Ct. App. 1994). And even if a suspected inability to prove a case is a policy factor, "it is usually better practice to submit the issue to the jury insofar as determining the issues of negligence and causation." *Padilla v. Bydalek*, 56 Wis. 2d 772, 779, 203 N.W.2d 15 (1973). Neither I nor the majority knows how the Johnsons plan to prove their case. When the Johnsons' daughter told them that they sexually and physically abused her when she was a child, she may have explained why she believed this was true. An expert witness might provide the necessary information. Their daughter might change her mind at a deposition and provide the necessary information. I believe that it is a dangerous practice for judges to guess what a plaintiff may or may

not be able to prove at trial, and to dismiss cases that they predict cannot be proven.

¶ 22. Nothing in *Sawyer v. Midelfort*, 227 Wis. 2d 124, 595 N.W.2d 423 (1999), requires this result. The most that case holds concerning the facts we face today is: "Perhaps problems of confidentiality would preclude liability from being imposed in a future case, but here it does not." *Sawyer*, 227 Wis. 2d at 150. I agree that problems of confidentiality may prevent the Johnsons from being able to prove their case, but I cannot agree that they should not be allowed to try.

¶ 23. It is better to decide cases that come to us with a record than those that do not. With a record, we need not speculate on what might or might not be proven. We can write a narrow opinion that does not venture far into the unknown facts of future cases. Even summary judgment cases have a better record than the one before us now. The trial court granted the defendants' motions to dismiss. Were I writing for the majority, I would let the Johnsons try to prove their case against the therapists.

¶ 24. Nor do I believe that WIS. STAT. § 893.55(1) (1997–98), the applicable statute of limitations, bars the Johnsons' claims against Rogers Memorial Hospital. Although the Johnsons' complaint could have been more specific, a reasonable inference from the facts alleged would be that the Johnsons' daughter's care at Rogers continued until at least October 28, 1993. The complaint, filed on May 29, 1996, was filed within the required three years.

¶ 25. Because I conclude that the trial court erroneously granted the defendants' motions to dismiss, I respectfully dissent.